In re the MARRIAGE OF Hilda M. WHITTIER and Charles M. Whittier.

Hilda M. WHITTIER, Appellant,

v.

Charles M. WHITTIER, Respondent.

No. 14875.

Missouri Court of Appeals, Southern District, Division One.

Aug. 4, 1987.

Jan Millington, Hall, Ansley, Carmichael & Gardner, Springfield, for appellant.

Icenogle & Icenogle, of Camdenton, for respondent.

CROW, Chief Judge.

Hilda M. Whittier ("Hilda") appeals from a decree dissolving her marriage to Charles M. Whittier ("Charles"). She briefs three assignments of error, each of which attacks the trial court's finding that the par-

ties' separation agreement is not unconscionable.

■ The statement of facts, Rule 84.-04(c),[1] in Hilda's brief contains several averments unsupported by the record on appeal, Rule 81.12(a). In this opinion, we confine our attention to the evidence of record before the trial court, *First National Bank of Carrollton v. McClure*, 666 S.W.2d 434, 436[1] (Mo.App.1983), pertinent to the points relied on by Hilda.

On June 2, 1986, Hilda and Charles appeared in the trial court with their respective attorneys.[2] Hilda filed a 3–page "Income and Expense Statement," and a 3–page "Financial Statement." Charles likewise filed a 3–page "Income and Expense Statement," and a 3–page "Financial Statement."

The trial court announced it had been advised that the parties had "resolved the matter," and that they would be testifying "to the oral property settlement agreement."

Hilda was thereupon sworn, and testified, among other things, that she and Charles were married March 23, 1957, that they separated January 6, 1986, and that the three children born to them were emancipated. Then, this:

"Q. Now, earlier this morning, prior to court commencing a few moments ago, I'd like to ask you whether or not you and Mr. Whittier, by and through your respective attorneys, and you also, were involved in the negotiations, have reached a negotiated settlement with regard to disposition of property which was acquired during the marriage?

A. Yes."

Hilda was then asked, and she answered, 30 questions, establishing that she and Charles had reached the following agreement.

### Marital Property

Hilda was to receive the marital home and 15 acres. Her financial statement valued this asset at $250,000; Charles' financial statement valued it at $450,000. A 3–page document captioned "Marital Assets," offered in evidence by Hilda, and received by the trial court as Petitioner's Exhibit 1, showed that the property was subject to an encumbrance of $31,904.17. Hilda testified she was to assume that debt. We henceforth refer to this property as Tract 1.

Hilda was also to receive a "house in Climax Springs." Her financial statement valued it at $30,000; Charles' financial statement valued it at $18,000. Hilda testified there was no encumbrance thereon. We henceforth refer to this property as Tract 2.

Additionally, Hilda was to receive an "office building in Climax Springs," which her financial statement valued at $24,700, and Charles' financial statement valued at $30,-000. Petitioner's Exhibit 1 showed a lien of $261.93 on that property, henceforth referred to as Tract 3. Hilda was to assume that debt.

Besides the real estate, Hilda was to be awarded the following "notes receivable" listed on Petitioner's Exhibit 1.

| Maker | Amount Due |
| --- | --- |
| Charles Lederman (note and deed of trust) | $36,817.81 |
| Ken McCoy (note and contract) | 18,498.45 |
| Bonnie Anderson (note) | 508.22 |
| Lawrence Redden (note and deed of trust) | 13,300.74 |
| Rays Diggins, Inc. | 784.00 |

These five notes total $69,909.22.

Hilda testified she was also to receive a corporation, Pine Cone Real Estate, Inc., which was "basically" her business. Petitioner's Exhibit 1 assigned that asset a value of $10,000. Charles' financial statement showed the value "Unknown."

Furthermore, said Hilda, she was to receive the items listed below. The figures in the column "Hilda's Value" appeared in Petitioner's Exhibit 1. The figures in the column "Charles' Value" appeared in Charles' financial statement.

---

**1.** Rule references are to Missouri Rules of Civil Procedure (18th ed. 1987).

**2.** The attorneys representing Hilda in this appeal did not represent her in the trial court; the same is true of the attorneys now representing Charles.

| Item | Hilda's Value | Charles' Value |
|---|---|---|
| Household furnishings | $2,000 | $4,000 |
| 1983 Chevrolet | 9,000 | 9,000 |
| 300 shares, Colorado Life Ins. Co. | None | Unknown |
| John Deere garden tractor & mower | 2,000 | 1,500 |
| Half interest, "cruiser boat" | 2,000 | 2,500 |
| Mark Twain inboard-outboard runabout | 1,500 | 1,000 |

According to Petitioner's Exhibit 1, the Chevrolet was encumbered by a lien of $8,500.

Finally, Hilda was to receive a garden tiller and a planer and bench saw. We find no value assigned by either party to those items.

Charles, according to Hilda, was to receive 32 head of cattle, which had been sold prior to the date of the hearing. Neither Hilda nor Charles assigned a value to the cattle.

Charles was also to receive the personal property listed below. The figures in the column "Hilda's Value" appeared in Petitioner's Exhibit 1. The figures in the column "Charles' Value" appeared in Charles' financial statement. Where a value was not assigned, the term "omitted" so indicates.

| Item | Hilda's Value | Charles' Value |
|---|---|---|
| 1982 Chevrolet pickup with overhead camper & shell camper | $7,000 | $4,000 |
| 2 mules, 2 horses | omitted | 500 |
| Farmall tractor | omitted | 300 |
| Allis Chalmers tractor | omitted | 300 |
| riding lawn mower | omitted | 50 |
| 1983 Ford LTD automobile | 13,000 | 6,000 |
| power tools, hand tools | omitted | 400 |
| guns | omitted | omitted |
| horse trailer | omitted | omitted |
| saddles and tack | omitted | 200 |
| aluminum fishing boat & motor | 200 | 150 |

According to Charles' financial statement, the 1983 Ford LTD was encumbered by a lien of $3,800. Hilda testified Charles was to assume that debt.

Finally, Charles was to receive from Hilda a $5,000 cash payment "prior to the end of this week," and a $190,000 cash payment within four months after the date of the hearing.

## Hilda's Separate Nonmarital Property

Hilda explained that she was to receive, as her separate property, four lots in El Paso County, Colorado, together with the "Sandy Beach property." A 2-page document captioned "Separate Assets of Petitioner," offered in evidence by Hilda, and received by the trial court as Petitioner's Exhibit 2, valued the four Colorado lots, in the aggregate, at $90,000, and valued the Sandy Beach property at $25,000. These properties, according to Exhibit 2, were lien-free.

Hilda was also to receive as her separate property the "Muir note" valued at $7,932.91, a 1969 Cadillac valued at $200, the "Paine Webber Cash Fund" valued at $12,150, and four $1,000 certificates of deposit.

Finally, as her separate property, Hilda was to receive the "Caputo note," two guns, a bench vise, 190.344 shares of Puget Sound Power & Light Co., and 1535.941 shares of Franklin Custodian Funds, Inc. No values were assigned to those assets by either party.

\* \* \*

Hilda testified she and Charles had further agreed that each would pay his own attorney fees, and that she would seek no maintenance from Charles. Then, this:

"Q. You're asking the Court to approve the separation agreement to which you have just testified and to incorporate that into a decree of dissolution of marriage by reference; is that correct?

A. Yes."

Charles was then sworn, and testified:

"Q. Now, you've heard the—You and I have heard the terms of the separation agreement which [Hilda's attorney] has just gone through with Mrs. Whittier. Are the terms of that correct?

A. Yes.

Q. And are you willing to sign, after the divorce is granted, whatever papers need to be to transfer that—those to her? Now, I have—I have in mind on that, that the notes will need to be endorsed by you, notes that she is to get. That, possibly, you may need to sign an

assignment of the deeds of trust. And the real estate that she is to get, that you will sign a deed conveying your—your right, title and interest into that land to her?

A. Yes.

. . . .

Q. You foresee no problem in being available to sign a separation agreement that may be prepared which spells out in writing the agreement to which Mrs. Whittier just testified and to which you have just agreed?

A. No."

At the conclusion of the evidence, the trial court stated:

"The parties have testified to the property settlement agreement as agreed to between them. The Court approves that agreement, finds it to be conscionable and the parties are ordered to comply with the terms of that agreement. I'm ordering the agreement reduced to writing, executed by both parties, and filed back with the Court within 15 days. The Court is taking the matter under advisement pending the filing of that written separation agreement."

On June 13, 1986, the trial court signed a decree dissolving the marriage of Hilda and Charles. The decree recited, among other things:

"... this cause was by the Court taken under advisement until such time as the parties hereto file their written Separation Agreement; and the Court further finds that said Separation Agreement has now been filed and that it is not unconscionable.

. . . .

IT IS FURTHER ORDERED, ADJUDGED AND DECREED BY THE COURT THAT the parties perform the terms of their Separation Agreement filed herein, which is incorporated herein by reference and made a part hereof as if fully set forth herein."

The separation agreement referred to in the decree consisted of eight pages. Hilda's acknowledgment thereon was dated June 4, 1986; Charles' acknowledgment was dated June 10, 1986.

The written agreement faithfully tracked the agreement testified to by the parties, and, in addition, provided that Hilda and Charles would each receive all monies on deposit in their respective names at any bank or similar institution. In that regard, Hilda's financial statement showed she had $700 in such funds; Charles' financial statement showed he had $1,891 in such funds.

On June 23, 1986, ten days after the decree had been signed, Hilda, by a different attorney than the one who had represented her at the June 2 hearing, filed a motion to set the decree aside.[3] A hearing was held on Hilda's motion July 1, 1986. At that hearing, Hilda attempted to present evidence regarding the source of funds by which some of the jointly owned property had been acquired, and she also endeavored to present an appraisal of Tract 1.

The trial court refused to receive such evidence, stating it would not permit evidence of any different values than were presented at the June 2 hearing, as "there was evidence given at that time as to what the value of the property was." The trial court added, "The only thing I'm going to allow you to go into is as to [Hilda's] physical or mental condition at the time that would cause her not to know what she was agreeing to."

Hilda then testified that she entered into the separation agreement because of anxiety that the property would be "auctioned off," that she had felt "pressured" to make the agreement, and that after reflecting on it she felt it was not fair.

The trial court denied Hilda's motion, stating in its docket entry:

"... the court observed the parties in the courtroom & neither found nor observed anything that would indicate [Hilda] was not acting freely, knowingly & intelligently. The court found the agreement to be conscionable & a fair division of the property rts of the parties. Therefore

3. The attorney who filed the motion does not represent Hilda in this appeal.

the agreement is enforceable as testified to by the parties on the stand."

This appeal followed.

Hilda's first point is:

"The trial court erred ... in concluding that the oral property settlement agreement ... was not unconscionable, in that the settlement agreement must be in writing pursuant to Section 452.325, RSMo 1978, and ... the court is without authority to approve an oral property settlement agreement."

■ In support of this point, Hilda cites *Potter v. Potter,* 621 S.W.2d 123 (Mo.App. 1981); *Wilhoit v. Wilhoit,* 599 S.W.2d 74 (Mo.App.1980); and *Turpin v. Turpin,* 570 S.W.2d 831 (Mo.App.1978). Hilda's theory, as we comprehend it, is that while parties to a dissolution proceeding are free to agree between themselves as to the division of their marital property, they are required by § 452.325, RSMo 1978, to put their agreement in writing before presenting it in court for a finding on whether it is unconscionable, and that a trial court has no authority to find that an *oral* separation agreement is not unconscionable. Hilda maintains that the requirement of a written separation agreement was "skipped" in the instant case, as the trial court never approved the parties' *written* agreement. Hilda boldly asserts, "There is no evidence in the record that the judge ever saw the Property Settlement Agreement, much less read it."

Charles, citing *Peirick v. Peirick,* 641 S.W.2d 195 (Mo.App.1982), and *Markwardt v. Markwardt,* 617 S.W.2d 461 (Mo.App. 1981), responds that oral separation agreements entered into in open court and found not unconscionable by the trial court are as valid as written separation agreements.

For the reasons that follow, we need not undertake an exhaustive analysis of the cases cited by Hilda or those cited by Charles, nor need we consider whether there is any conflict between any of them.

Hilda's first point hinges on the premise that the trial court never approved the parties' written separation agreement. That premise is flatly refuted by the record.

As reported earlier, the dissolution decree solemnly recites that (a) after the hearing on June 2, the cause had been taken under advisement until such time as the parties filed their written separation agreement, (b) the agreement has now been filed and found not unconscionable, and (c) the agreement "filed herein" is incorporated in the decree by reference, as if fully set forth there.

Hilda's contention that the trial court never approved the parties' written separation agreement is meritless, if not ludicrous.

Hilda also argues under her first point that the written agreement "does not mirror" the oral agreement. She neglects, however, to identify the discrepancy, evidently relying on us to seine the record and find it. We have compared the parties' testimony with their written agreement, and have failed to espy any material conflict.

■ The fact that the trial court heard the evidence pertaining to the separation agreement before it was reduced to writing does not, in our view, vitiate the trial court's finding, 11 days after the hearing, that the written agreement was not unconscionable. The trial court, after hearing the evidence, prudently waited until the agreement was presented in writing before entering the decree, and was careful to specify in the decree that it was the written agreement "filed herein" which was incorporated in the decree.

Inasmuch as the trial court, as manifested by its decree, approved the *written* separation agreement, we need, and do not, decide whether a trial court in a dissolution proceeding is authorized to enter a decree finding an oral separation agreement not unconscionable. Hilda's first point is denied.

■ Hilda's second point maintains that the trial court erred in finding that the separation agreement was not unconscionable, in that "the decision was made in a perfunctory fashion with insufficient evidence upon which to make the determination." Hilda correctly points out that

§ 452.325.2, RSMo 1978, provides that a trial court, in determining whether a separation agreement is unconscionable, is to consider "the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court." Hilda insists the trial court's finding that the separation agreement was not unconscionable was made "without the benefit of any evidence detailing the assets of the marriage, the value of the assets, both real and personal, or the value of the assets received by either party pursuant to the [separation agreement]."

Again, Hilda, intentionally or unknowingly, misstates the record.

Charles' income and expense statement set forth his monthly income and several items of monthly expense. Hilda's income and expense statement set forth her annual "wages and commissions," her monthly "other income," and nine separate items of monthly expense.

Charles' financial statement set forth his cash on hand and his valuations of the items listed earlier in this opinion. Hilda's financial statement set forth her cash on hand, and, together with Petitioner's Exhibits 1 and 2, set forth her valuations of the items listed earlier in this opinion.

Hilda and Charles each assigned a value to each of the three tracts of marital real estate received by Hilda. Hilda assigned a value to each of the five notes received by her, and she likewise assigned a value to Pine Cone Real Estate, Inc., which she also received. Hilda and Charles each assigned values to the household furnishings, 1983 Chevrolet, John Deere garden tractor and mower, the half interest in the cruiser boat, and the Mark Twain runabout, received by Hilda. The 300 shares of Colorado Life Insurance Company received by Hilda had no value, according to her. The only items of marital property received by Hilda to which neither she nor Charles assigned a value were the garden tiller and the planer and bench saw.

Hilda and Charles each assigned values to the 1982 Chevrolet pickup, the 1983 Ford LTD, and the aluminum fishing boat and motor received by Charles. Charles assigned a value to the two mules and two horses, the Farmall tractor, the Allis Chalmers tractor, the riding lawn mower, the power tools and hand tools, and the saddles and tack received by him. The only items of marital property received by Charles to which neither he nor Hilda assigned a value were the 32 head of cattle, the guns, and the horse trailer.

Values were assigned by Hilda to all nonmarital real estate set apart to her. Hilda likewise assigned values to the Muir note, the 1969 Cadillac, the Paine Webber Cash Fund, and the four certificates of deposit, also set apart to her as nonmarital property.

Hilda's brief proclaims that although she agreed "to assume the debt on all real property that was awarded to her, there was no evidence presented to the court as to the amount of debt on any one piece of property."

That is another misreport of the record.

As noted *supra*, Petitioner's Exhibit 1 showed that Tract 1 was encumbered by a $31,904.17 lien, and that Tract 3 was encumbered by a $261.93 lien. Hilda, in her testimony of June 2, 1986, confirmed that there was no lien on Tract 2. As also noted *supra*, Petitioner's Exhibit 2 showed that all nonmarital real estate set apart to Hilda was unencumbered.

Hilda cites *Block v. Block*, 593 S.W.2d 584, 591–92[12] (Mo.App.1979), for the proposition that the trial court, in considering the propriety of the separation agreement in the instant case under § 452.325.2, RSMo 1978, should have considered the statutory factors listed in § 452.330.1(1)-(4), RSMo 1978. *Block*, as we read it, holds that while § 452.325.2 applies to instances where the parties themselves agree on the division of their marital property, and § 452.330.1 applies to instances where a trial court is called upon to divide the marital property, a trial court determining whether a separation agreement is unconscionable under the former section should consider the factors listed in the latter section.

Charles responds by citing *Peirick*, 641 S.W.2d at 196–97[2], which holds that the applicable standard for a trial court's review of a separation agreement under § 452.325.2 is whether such agreement is unconscionable, i.e., an inequality so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing an exclamation at the inequality of it.

As shall become apparent *infra*, we need not, in this opinion, choose between *Block* and *Peirick*.

 The trial court in the instant case, as we have seen, had before it the property values and encumbrances heretofore listed, together with information about the economic circumstances of each party, as shown on each one's income and expense statement. Neither party, at the hearing on June 2, 1986, offered evidence as to the contribution of either to the acquisition of the marital property, nor did either offer evidence of the other's conduct during the marriage. If Hilda had believed the trial court should consider such evidence on the issue whether the separation agreement was unconscionable, she had ample opportunity to assemble such evidence and present it, as the cause had been pending almost five months.

The trial court had no duty *sua sponte* to inquire into such areas. *Dow v. Dow*, 732 S.W.2d 906 (Mo. banc. 1987), squarely holds that § 452.325.2, which governs court approval of separation agreements in dissolution actions, allows, *but does not require*, a trial judge to investigate and examine the economic circumstances of the parties and other relevant factors in deciding whether an agreement is unconscionable. *Dow* adds that to the extent that *Block* and other cases hold differently, they are overruled.

Hilda's contention that the finding that the separation agreement was not unconscionable was made perfunctorily and upon insufficient evidence is destitute of merit. Her second point is, accordingly, denied.

 Hilda's final assignment of error asserts that the substantial weight of the evidence demonstrates that the "conditions and payments" set forth in the separation agreement "render it unconscionable on its face." While this hypothesis is arguably inconsistent with Hilda's previous contention that there was insufficient evidence upon which to make a determination on the issue whether the agreement was unconscionable, we shall nonetheless consider the point on its merits.

According to Petitioner's Exhibit 1, Tract 1 was worth $250,000, with an encumbrance of $31,904.17, leaving a net value of $218,095.83. Tract 2, according to Exhibit 1, was worth $30,000, with no encumbrance. Tract 3, according to Exhibit 1, was worth $24,700, with an encumbrance of $261.93, leaving a net value of $24,438.07.

The five notes listed on Exhibit 1 totaled $69,909.22, and Pine Cone Real Estate, Inc., was valued at $10,000 by Exhibit 1.

According to Exhibit 1, the household furnishings were worth $2,000, the John Deere garden tractor and mower was worth $2,000, the half interest in the cruiser was worth $2,000, and the Mark Twain runabout was worth $1,500.

Exhibit 1 valued the 1983 Chevrolet at $9,000, and showed it was encumbered by an $8,500 lien, leaving a net value of $500.

Turning to the marital property received by Charles, we observed earlier that Hilda assigned values to only three items, the 1982 Chevrolet pickup with overhead camper and shell camper, the 1983 Ford LTD, and the aluminum fishing boat and motor. Charles, on the other hand, assigned values to all marital property received by him except the 32 head of cattle, the guns, and the horse trailer. The values assigned by Charles to the marital property received by him were: 1982 Chevrolet pickup, $4,000; 2 mules, 2 horses, $500; Farmall tractor, $300; Allis Chalmers tractor, $300; riding lawn mower, $50; power tools, hand tools, $400; saddles and tack, $200; aluminum fishing boat and motor, $150. The 1983 Ford LTD, according to Charles, was worth $6,000, and was encumbered by a $3,800 lien, leaving a net value of $2,200.

The aggregate net value of the marital estate, according to the above figures, was $368,543.12.

Utilizing those figures, we see that Hilda receives marital assets with an aggregate net value of $360,443.12, while Charles receives marital assets with an aggregate net value of $8,100. Deducting from Hilda's share the $195,000 she agreed to pay Charles, and adding that sum to Charles' share, we see that Hilda ends up with $165,443.12, and Charles ends up with $203,100. The above computations thus show that Charles departs with $37,656.88 more in marital assets than Hilda. Charles, by the above figures, receives 55 per cent of the marital estate; Hilda receives 45 per cent.

While that may appear, on cursory examination, to be a substantial disparity, we must remember that Charles valued Tract 1 at $450,000, which was $200,000 more than Hilda's valuation, Charles valued Tract 3 at $30,000, being $5,300 more than Hilda's valuation, Charles valued the household furnishings (received by Hilda) at $2,000 more than she valued them, and Charles valued the interest in the cruiser (received by Hilda) at $500 more than she did. The trial court, of course, was not obliged to accept all of Hilda's figures. *Paramount Sales Co., Inc. v. Stark*, 690 S.W.2d 500, 501[2] (Mo.App.1985). To the extent that the worth of those items exceeds the values assigned by Hilda, her percentage share of the marital estate is enhanced.

In arguing that the finding that the separation agreement was not unconscionable was against the weight of the evidence, Hilda asserts that the trial court did not consider the economic circumstances of the parties, as mandated by § 452.325.2, RSMo 1978.

In weighing that contention, one must be mindful that Hilda received, as her separate nonmarital property, unencumbered real estate which, according to Petitioner's Exhibit 2, had an aggregate value of $115,000. Hilda also received nonmarital personal property, some items of which were assigned values by Exhibit 2, and some

items of which were not. The items assigned values were worth, in the aggregate, $24,282.91.

Besides that information, the trial court had before it Charles' income and expense statement, showing he draws "disability social security" of $524 per month, and a "disability union pension" of $150 per month. The document further showed that within the two months preceding the June 2, 1986, hearing, Charles had earned between $600 and $700 working for one Wilkerson. Hilda's income and expense statement showed she had gross wages and commissions between $2,000 and $5,000 annually, together with $300 per month social security and $1,703 per month "payments coming in."

There was, consequently, substantial evidence before the trial court regarding the parties' "economic circumstances," and nothing in the record suggests that the trial court failed to consider such evidence in deciding whether the separation agreement was unconscionable.

Under § 452.325.2, RSMo 1978, the terms of a separation agreement regarding the division of marital property are *binding* upon the trial court *unless* it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the agreement is unconscionable. As explained in *Peirick*, 641 S.W.2d at 196–97[2], an agreement is unconscionable if its inequality is so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing an exclamation at the inequality of it.

Measuring the record before us by the above standard, we cannot convict the trial court of error in finding that the separation agreement was not unconscionable. Hilda's final point is denied.

■ In closing, we point out we have not overlooked Hilda's testimony on July 1, 1986, that she entered into the separation agreement because she felt pressured by the possibility that the marital property

would be auctioned. The trial court, as reported *supra,* found nothing to indicate Hilda was not acting freely, knowingly and intelligently when she made the agreement, and that finding is unchallenged on this appeal. Consequently, no issue as to the voluntariness of the agreement is before us.

The decree of dissolution of marriage is affirmed. The order of this Court entered October 1, 1986, granting Hilda's motion for stay of execution, is vacated and set aside.

GREENE, P.J., and HOLSTEIN, J., concur.