**Linda L. Morgan HORD, Respondent,**

v.

**Melvin L. MORGAN, Appellant.**

**No. WD 40770.**

Missouri Court of Appeals,
Western District.

April 4, 1989.

Lois M. Zerrer, Springfield, for appellant.

Harold Kyser, Butler, for respondent.

Before FENNER, P.J., and SHANGLER and BERREY, JJ.

FENNER, Presiding Judge.

Appellant Melvin L. Morgan, the father herein, appeals from an order of the trial court modifying provisions of an original divorce decree between himself and Linda L. Morgan (now Hord), the mother herein. The portions of which Melvin complains relate to the modification of an award of joint custody of the parties' minor children, Travis Floyd Morgan and Tracy Marline Morgan, to sole custody in Linda and the modification of the visitation provisions which reduced the summer visitation of Melvin.

The marriage of the parties was dissolved on August 31, 1983, in the District Court of Montgomery County, Kansas at Coffeyville. At that time the parties were awarded joint custody of their minor children, Travis, born August 21, 1976 and Tracy, born February 21, 1980. Linda was given primary physical custody from the seventh day before school began in August to the seventh day following the last school day in May of each year. Thus, Melvin was given primary custody from the seventh day after the last day of school in May until the seventh day before school started in August of each year. The parties were given reasonable rights of visitation when the children were in the custody of the other parent, upon 24–hour actual notice. Said reasonable rights of visitation, included, but was not limited to, every other weekend, from 8:00 p.m. on Friday to 7:00 p.m. on Sunday, and alternate school holidays, school vacations, children's birthdays and the 4th of July. Pursuant to the visitation schedule each party was to deliver the children to and pick them up from the other party at the Downtowner Motel in Fort Scott, Kansas, or such other place as the parties would agree on.

Presently, Linda is remarried to Jimmy Hord and lives in Clinton, Missouri. Melvin is single. Following the death of his father in 1984, he moved to Welch, Oklahoma and currently resides on his mother's farm.

A short time after the dissolution, problems began to arise between the parties with regard to visitation and child support. The record contains numerous allegations by both parties as to the misconduct of the other. A lengthy recitation of these allegations however, need not be advanced herein.

The court order appealed from reduces Melvin's visitation rights to at least one weekend per month and on alternate holidays. The parties were ordered to deliver the children to the other's home. Melvin is to have six weeks visitation. Substitute visitation is to be provided if inclement weather interferes. Pursuant to the order, joint custody was changed to sole custody in Linda.

On appeal, Melvin contests the change from joint custody to sole custody in Linda and the reduction in visitation. Initially, it should be noted that the situation herein does not arise out of a problem concerning Melvin's parental relationship with his children. Rather, the modification was sought on the grounds of inconvenience and time allocations in that the children were required by the original decree to travel 400 miles for each visitation, thus causing them extreme hardship and on occasion causing them to be ill or extremely tired and to miss school as a result.

Melvin presents five points on appeal, the first of which avers that the trial court erred in admitting certain statements of witnesses into evidence because said statements constituted inadmissible hearsay. He cites to at least nine instances where he alleges said hearsay testimony was improperly introduced. The complained of testimony was heard from Linda Hord, Barbara Kutcha, Linda's friend, and Martha Harbough, Linda's mother. However, a review of the record reveals only two instances, both involving the testimony of Barbara Kutcha, where objections were raised to the complained of testimony.

It is an elementary principle of law that matters complained of must be preserved for review by objection. *State ex rel. Williams v. Williams*, 609 S.W.2d 456, 460 (Mo.App.1980). Where, as here, such matters are not preserved they will not be considered on appeal. Thus, this court is limited to the properly preserved complaints regarding the testimony of Barbara Kutcha.

Barbara Kutcha, as previously stated, was a friend of Linda Hord. Ms. Kutcha had a Bachelor of Science degree in Communications in 1985 and 1986 during the time that she testified she counseled the children. In 1986 she received a Master's Degree in Counseling. According to her testimony, Ms. Kutcha saw the children off and on for about a year and a half in a counseling type situation. She stated that Travis had some confusion about the roles of his parents and with Tracy "the big thing was actually the trip." Over objection, Ms. Kutcha was allowed to testify as to things Travis had told her regarding statements made by Melvin to Travis about Linda. In pertinent part her testimony was as follows:

"Q. Okay. And who would make those statements?

A. His father.

Q. And what type of statements were they?

A. Statements, 'Your mother really doesn't care about you. Your mother is not a good mother.' Along that line. That is about as specific as I can get."

Ms. Kutcha was also asked as to her awareness of some bruises that Travis had. Again, over objection, she testified as to statements Travis made concerning the bruises. She stated that Travis told her that he had been punished by his father and that the bruises occurred from that punishment.

■ Appellant correctly cites authority for the proposition that in modification actions, testimony concerning a child's statements to a witness are purely hearsay and generally are properly excluded from evidence. In *Dagley v. Dagley*, 270 S.W.2d 553 (Mo.App.1954), the mother and grandmother were allowed to testify at trial as to conversations they had with the child following the child's return from the father's home. The child had related facts regarding improper care and treatment, according to the mother's and grandmother's testimony. The Court of Appeals found this testimony to be a clear violation of the hearsay rule and in making its own findings would disregard such evidence. *Id.* at 558. In *M v. G*, 301 S.W.2d 865 (Mo.App.1957), statements made by a 12 year old child to witnesses concerning alleged mistreatment of the child by her mother and stepfather were found to be incompetent hearsay evidence. The Court found that the evidence should have been excluded and could not be considered by the reviewing court on appeal.

Likewise, the more recent case of *C.R.K. v. H.J.K.*, 672 S.W.2d 696 (Mo.App.1984), reiterates the proposition that in modification actions, testimony concerning a child's statements to a witness is purely hearsay and where admitted for truthfulness, is done so wrongfully. In *C.R.K.*, the father's visitation rights were severely restricted by the trial court following a finding that he was a sexual abuser of his own child. The Court of Appeals found the evidence to be insufficient in that case because the only evidence in the record concerning the child's statements and asserted acts was hearsay and inadmissible for any purpose. *Id.* at 698. The Court, however, stated that the admission of improper evidence is not ordinarily a ground for reversal in a non-jury case where it does not appear to have played a critical role in the court's decision. *Id.*

■ In the present case, the complained of hearsay testimony does not appear to have played a critical role in the court's decision to modify the custody decree. Rather, the simple fact that the children were forced to travel some 400 miles every other weekend pursuant to the prior decree, in and of itself appears to have been the critical factor in the court's decision.

The children were subject to frequent shifts of custody between their divorced parents who resided in separate and non-adjoining cities, a situation not in their best interest. *See, Taylor v. Taylor,* 548 S.W. 2d 866, 868–869 (Mo.App.1977). Thus, the best interest of the children being the critical factor, it cannot be said that the trial court erred in improving what was once a detrimental situation by modifying the custody decree.

Appellant's point I is denied.

It is also worthy of note that in dealing with custody matters there can be legitimate and relevant reasons for the trial court to have before it evidence of what children are saying to others concerning their relationship with their parents, i.e., other than for the truthfulness of what has been said. The trial court judge can receive this evidence, in the nature of background information, in an effort to determine whether to exercise its discretion to conduct an in-chambers interview with the children pursuant to § 452.385, RSMo 1986. If the court then feels that the best interest of the children requires an interview this evidence can assist the court in conducting a meaningful interview.

Further, a recent trend toward increased flexibility regarding the admission of statements made by a child to others is illustrated by the court in *In re Marriage of P.K.A.,* 725 S.W.2d 78 (Mo.App.1987), which is cited by both parties in their briefs.

In *P.K.A.* the appellant/father challenged the admissibility of statements of his child made to others indicating that he had sexually abused the child, arguing that the statements were inadmissible hearsay. On appeal, the Court carved out a special hearsay exception finding the exception mandated by the necessity to have statements of a child indicating abuse considered for their truth. The Court discussed its reasoning at length stating:

"Where the best interest of the child is the primary concern, we believe that the courts should consider those statements for their truth. Although it may be an unfavorable reflection on the father if he has not been abusing the child, the paramount consideration must be the welfare of the child.

This type of abuse would not often occur in the presence of persons competent to testify. Where there is a substantial basis to believe that the statements of the child are true, courts are justified in hearing and considering them to prevent further or potential abuse to a child. . . .

Flexibility is needed in these cases, even where the child might be qualified to testify, because of the emotional trauma that such an experience may cause. It is desirable to avoid the necessity of forcing a young child to testify as to abuse, particularly when the abuser is the victim's parent. (Citations omitted).

This exception should support efforts to prevent child abuse. It is to be used only where abuse may have occurred, or has been threatened, and the child might not be competent or reasonably expected to testify to it." 725 S.W.2d at 81.

This court is not unmindful that the facts of *P.K.A.* involved an allegation of sexual abuse. At the same time, it is difficult to say that, under the rationale of the court in *P.K.A.,* the special exception should be only applied in cases where sexual abuse is alleged. The goal of the exception is to prevent *child abuse* and to attempt to alleviate the consequent trauma that a child may experience through testifying. (Emphasis added.) That being the case, this court is unable to say that where emotional or physical abuse is alleged the resulting trauma to a child is to a lesser degree such that the special exception created by the Court in *P.K.A.* should not apply.

In point two, Melvin charges as error the trial court's admission of Barbara Kutcha's testimony because she was not properly qualified as an expert witness. He claims that because Ms. Kutcha did not have a Master's Degree at the time she began to meet with the children that she was not properly qualified to give her opinion as to the impact of visitation on the children.

The record indicates that Ms. Kutcha became acquainted with Travis and Tracy when she was a student in the process of receiving her Master's Degree in Counseling. She testified that she had been Linda's friend for four to five years and that she sees Linda on a social basis. Ms. Kutcha stated that she had seen the children off and on in a counseling type situation over a period of about a year and a half. During the time she was a student her counseling relationship with the children developed as part of a supervised student project. Also, at this time Ms. Kutcha would go occasionally with Linda as a friend when the children were picked up following their visitation.

Ms. Kutcha was allowed to testify, over objection, that as a result of these counseling situations, she was of the opinion that Travis was experiencing confusion about the roles his parents played and that following the visitation trips he would experience mood swings and be depressed at times. As to Tracy, Ms. Kutcha testified that the big problem was the trip, that Tracy was showing a lot of emotional insecurity at that time due to the bond with her mother, that Tracy needed the more stable environment with her mother and that the visits were causing Tracy a lot of emotional problems.

At the time of trial, Ms. Kutcha had received her Master's Degree in Counseling. Since that time she had seen the children in a therapeutic type relationship. Although her relationship with the children since she received her degree was not on a regular basis and sometimes in Linda's home, Ms. Kutcha testified that nothing in her conversations with the children had changed her opinion that she formed during the prior student counseling project.

■ Whether a witness's qualifications to state an opinion are sufficiently established rests largely in the discretion of the trial court and its ruling thereon will not be disturbed on appeal unless there is a clear showing of abuse. *York v. Daniels,* 259 S.W.2d 109, 124 (Mo.App.1953). If the witness has some qualification the testimony should be permitted. *Id.* Further, the extent of an expert's experience or training in a particular field goes to the weight of the testimony and does not render the testimony incompetent. *In Interest of C.L.M.,* 625 S.W.2d 613, 615 (Mo. banc 1981).

■ Clearly Ms. Kutcha had some qualifications in the present situation. Although she was a student at the time of her initial acquaintance with the children when the counseling took place, the counseling was a supervised project. In addition, Ms. Kutcha after receiving her degree, stated that her opinion had not changed regarding the children. The extent of Ms. Kutcha's training was before the court and it was a question for the trial court judge to determine the weight it should be given, but her testimony was not, as appellant alleges, completely rendered incompetent. *C.L.M.,* 625 S.W.2d at 615.

There being no abuse of discretion by the trial court, point two is denied.

■ In point three, appellant alleges error because the trial court failed to interview the children on the record and relied on extrajudicial knowledge in arriving at its decision.

With regard to the trial court's failure to interview the children, appellant himself cites and acknowledges the dispositive rule of law herein which is that the trial court is vested with discretion pursuant to § 452.385, RSMo 1986, to interview the children in chambers. *Williams v. Cole,* 590 S.W.2d 908, 910–911 (Mo. banc 1979). Because the decision as to whether to interview the children in chambers is a matter of discretion the trial court cannot herein be charged with error in failing to conduct an interview.

As to his claim that the trial court considered evidence that was outside of the record, appellant quotes the following statement by the trial court judge:

"I suppose, under perfect circumstances, I would be able to consider only what occurred in this one hearing; but the fact of the matter, as you all well know, is we've had at least two full-blown hearings and, prior to that, at least on [sic] other a year or so ago.

And I'm not going to tell you that I've not considered anything but what we heard on April the 20th, 1988, in reaching this decision."

For the sake of efficiency, suffice it to say, that appellant's authorities cited in an attempt to support his position are not dispositive. Additionally, as has been the case throughout this appeal, respondent's brief does precious little in the way of responding to appellant's allegations of error. At any rate, appellant's point must fail.

Appellant cites authority for the proposition that although the court of appeals "has a duty (now incorporated in Rule 84.-14) to dispose finally of a case before it on appeal, the ironclad tone of this duty is tempered by the fact that final disposition 'presupposes a record and evidence upon which we can rule with some degree of confidence in the reasonableness, fairness and accuracy of our final conclusion.'" *Searcy v. Searcy*, 658 S.W.2d 931, 934 (Mo. App.1983) (citations omitted). As previously stated the record before this court clearly supports the modification entered by the trial court.

 Further, with regard to child custody matters, due regard must be given to the trial court's opportunity to evaluate intangibles which do not appear in the record. *In re Marriage of Powers*, 527 S.W.2d 949, 952 (Mo.App.1975). This is not to imply that such remarks as were made by the trial court herein, suggesting that something other than the record before it was considered, are to be encouraged. However, the trial court had before it sufficient evidence from which it could reach the decision, as it did, that the best interest of the children would be served by the modification of the original decree. Common sense dictates and the record reveals that the 400 mile trip every other weekend was detrimental to the children, causing them to be tired and occasionally to miss school. The record before the trial court and now before this court supports the modification. Point three is denied.

It is difficult to discern exactly what appellant's point four alleges, but apparently he alleges that he was denied sufficient time to present evidence and therefore, denied a meaningful opportunity to be heard in violation of his right to due process.

During the hearing of this case, the trial court judge indicated that the evidence would have to be concluded by three o'clock on that particular day as the judge had to be elsewhere at that time. This, according to appellant caused his, as well as respondent's counsel, to hurry to present their case. Appellant points out that respondent's counsel stated that two witnesses who had been subpoenaed by respondent were not able to be at the hearing because the court cut short the hearing of evidence. This, appellant claims, denied him the opportunity to rebut what these witnesses might have said.

The logic of this argument defies reason. Appellant cites no authority, and none exists, for the proposition that a party is denied due process when he is deprived of the opportunity to rebut what a witness might have said.

The fact of the matter is that the trial judge stated that the trial could continue the next day, if necessary. The trial judge in no way suggested that the parties would be foreclosed from presenting further evidence. Neither party requested the opportunity to present additional evidence. The trial court, under such circumstances, can hardly be charged with error. Point four is denied.

In his final point, appellant complains that the trial court erred in finding that he has repeatedly refused to cooperate and that he has hidden the children from respondent because such findings were against the weight of the evidence. To support his position he points to several alleged incidents of misconduct on behalf of respondent. He claims that the trial court placed the entire blame on him and that this was inappropriate.

 The record refutes this allegation. To say the least the record reveals that each party did their fair share of "mudslinging", a circumstance not uncommon in custody disputes. However, this court is guided by the standard of review in *Mur-*

*phy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The decision of the trial court must be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. A reversal on the grounds that the decision is against the weight of the evidence will occur only "with caution and the firm belief" that the decision is wrong. *Id.* It is presumed the trial court, after hearing and studying the evidence, made a ruling in the children's best interests. *Fastnacht v. Fastnacht,* 616 S.W.2d 98, 101 (Mo.App. 1981). As stated previously, a careful review of the record reveals substantial evidence that the modification would serve the best interest of the children. That being the case, point five is denied.

Based upon the foregoing, the decision of the trial court modifying the original custody decree is, in all respects, affirmed.

All concur.