**Veda M. EDWARDS, Appellant,**

v.

**Bobby Lee EDWARDS, Respondent.**

**No. 60442.**

Missouri Court of Appeals,
Eastern District,
Division Three.

April 28, 1992.

* All statutory references are to RSMo (Cum.Supp. 1991) unless otherwise specified.

Alan Edward Freed, Clayton, for appellant.

Robert F. Garza, Alan David Arand, Union, for respondent.

CRIST, Judge.

Mother appeals the trial court's grant of custody of the couple's child to Father upon their divorce. We affirm.

Mother and Father were married in 1965. Their only child (Son) was born in 1980. The parties separated February 26, 1990, and Wife filed the petition for dissolution of the marriage on March 13, 1990. Trial was held October 18, 1990. Son testified and expressed general satisfaction with both parents. The guardian ad litem stated he found both parents to be fit, but he thought Son would be happier living with Father.

On December 21, 1990, Father filed a motion to reopen the evidence. He alleged that Mother had moved in with her boyfriend and was subjecting Son to a "cohabitation atmosphere." A second hearing was held on April 15, 1991. Subsequent to that hearing, the trial court awarded custody of Son to Father.

On appeal, Mother's initial contention is that the trial court erroneously allowed and relied upon hearsay evidence in reaching its conclusions. The hearsay statements to which Mother objects are Father's and Son's teacher's accounts of Son's statement of his preference to stay with Father.

Mother is correct in her assertion that testimony concerning a child's statements to a witness is hearsay, and thus should properly be excluded. *Hord v. Morgan*, 769 S.W.2d 443, 446[1] (Mo.App.1989). However, "the admission of improper evidence is not ordinarily a ground for reversal in a non-jury case where it does not appear to have played a critical role in the court's decision." *Id.* In this case, the hearsay testimony does not appear to have played a critical role in the court's decision. The court conducted a lengthy *in camera* interview with Son in which Son indicated that he preferred to live with Father. The guardian ad litem's testimony also indicated he believed Son would be happier with Father. Also, no objection was preserved as to the teacher's testimony concerning Son's statements. Further, the court allowed Mother's attorney to question her as to some of her discussions with Son. Point denied.

In her second and third points on appeal, Mother argues the trial court impermissibly inquired into and relied upon Mother's religious beliefs in arriving at its decision. Mother argues that the court's questions had no bearing on or relevance to the custody issue.

A court's inquiry into religious beliefs *per se* is unquestionably improper. "Any suggestion that a state judicial officer were favoring or tending to favor one religious persuasion over another in a child custody dispute would be intolerable to our organic law. Judges should not even give the appearance of such preference or favor." *Waites v. Waites*, 567 S.W.2d 326, 333[1] (Mo.banc 1978). However, "inquiry into matters of child development as impinged upon by religious convictions is permissible." *Id.* at [2–3].

In this case, the court's inquiry was legitimate. The issue arose inadvertently, when the court asked Son how he celebrated Thanksgiving and Christmas. Son replied that he had not celebrated Christmas because Boyfriend's religion did not permit it. The court inquired if Son knew what Boyfriend's religion was, to which Son responded he did not know. Both Mother's and Father's attorneys subsequently went into further detail in their questioning of Mother. The court also inquired of Mother if she could describe some of the beliefs of this religion, which is apparently somewhat akin to Judaism. Mother was unable to respond to these questions.

In its findings of fact, the trial court stated that Mother's inability to explain the religious beliefs she had taken up since moving in with Boyfriend was some indication of her uncertain and unstable living environment, and that this instability affected the child's best interests. The court's questioning of Son revealed that Father neither attends church nor does he take Son to church. Thus the court was not favoring one faith or religious training over another. It also seems apparent that the court was not inhibiting a religious preference. In its findings, the court stated: "her religion makes no legal difference to the court, except as it affects the child, ... in his best interest." The court's concern was for the instability of the child's environment. In the same paragraph, the court refers to the fact that Mother was living alone with Son at the time of the first hearing but had moved into Boyfriend's house two weeks after the hearing, which was another indication of Mother's unstable living environment.

The court stated other reasons for its decision to grant custody of Son to Father. The guardian ad litem recommended that Son be placed with Father. Son's stated preference to the trial court at both hearings was that he wanted to live with Father. The court also stated that Son appeared to be happiest with Father, both because Father participated in more of Son's favorite activities than Mother and because Son preferred the school he would attend while living with Father.

While the court's inquiry was legitimately in the child's best interest in this case, this finding should not be construed as a basis for other courts to inquire into a parent's religious beliefs without very good reason and concern for the child's best interest. Nor should a court's claim that it is acting in a child's best interest be used as a pretext to award custody to the parent whose religious beliefs are most agreeable to the court.

The judgment awarding custody of Son to Father is affirmed.

PUDLOWSKI, P.J., and STEPHAN, J., concur.