**C.A.B., minor child, Defendant,**

**Jackson County, Missouri, Intervenor.**

**No. WD 48644.**

Missouri Court of Appeals,
Western District.

Sept. 13, 1994.

Kimberly Hughes, Grandview, for appellant.

Christine R. Russell, Kansas City, for respondent.

Before KENNEDY, P.J., and BRECKENRIDGE and SPINDEN, JJ.

SPINDEN, Judge.

K.J.B. appeals the trial court's transfer of physical custody of her son to C.A.B., the boy's father, and the court's modification of support provisions of a dissolution decree. We affirm the trial court's custody modification, and we reverse the child support modification and remand the matter to the trial court with directions.

K.J.B. and C.A.B. divorced in 1992. The dissolution decree provided for joint custody of their son and placed the boy in the physical custody of K.J.B. It ordered C.A.B. to pay child support. The boy lived with his mother, and visited his father on alternate weekends.

C.A.B. sought a change in custody after he decided in May 1992 that his son had been sexually abused while in K.J.B.'s custody. The boy, then three years of age, was visiting his father's house when the boy told the father's fiancée that K.J.B.'s brother had stuck pencils in the boy's "butt." C.A.B. asked the police to investigate and took his son to Children's Mercy Hospital. The examining physician detected a bruise on the son's right buttock, weakened anal tone, and a five millimeter displacement of the rectal sphincter. The physician concluded that the boy had suffered anal trauma consistent with sexual assault. When asked who injured him, the boy named four male relatives of K.J.B.: an adult uncle, two teenage cousins, and a two-year-old child.

In his motion to modify custody, the father accused the mother of neglecting their son, of not protecting him from physical and sexual abuse, and of exposing him to a dangerous environment. He also alleged that, while in the mother's custody, the son was injured with cuts, bruises, and welts, was subjected to poor hygiene, was inappropriately dressed in dirty clothing, was susceptible to ear aches, and was allowed to carry a firearm.

K.J.B. filed a counter motion in which she alleged that C.A.B. had repeatedly threatened to remove the boy so she would not see him. She contended that C.A.B. had not cared properly for the child during visits and did not return him at the proper time. She asked that C.A.B.'s visits with the boy be supervised.

The trial court appointed a guardian ad litem. The Division of Family Services investigated the matter. After trial, the court granted C.A.B.'s motion and transferred physical custody to C.A.B. and granted K.J.B. visitation rights. The trial court also ordered K.J.B. to pay C.A.B. $371 a month for child support.

K.J.B. raises five points on appeal. She complains that the trial court erroneously (1) considered hearsay evidence of her son's out-of-court statements; (2) excluded testimony by a prosecuting attorney indicating that C.A.B. did not truly believe that his son had been abused; (3) considered a social worker's and a psychotherapist's recommendations concerning custody; (4) ordered transfer of physical custody against the weight of the evidence; and (5) ordered K.J.B. to pay C.A.B. $371 a month for child support.

## Hearsay Evidence of Victim's Statements

Over K.J.B.'s objections, the trial court allowed a therapist, C.A.B., and C.A.B.'s relatives to quote the boy's out-of-court statements. They quoted the boy as saying numerous times that (1) his mother always left him with his grandparents to be with her boyfriend; (2) that his grandfather let him carry a gun, called "Big Bertha"; (3) that his grandfather had hit him two or three times; (4) that his aunt and cousins had pinched and punched him; and (5) that he was afraid to go to his mother's home because his uncle would hurt him.

K.J.B. argues on appeal that none of the statements fit within any hearsay exception and were significant in the trial court's modification of custody. She contends that the

hearsay's cumulative effect unduly prejudiced her by portraying her family unfavorably.

■ Testimony concerning a child's statements to a witness is hearsay and generally should be excluded from evidence. *Hord v. Morgan,* 769 S.W.2d 443, 446 (Mo. App.1989). Nevertheless, admission of improper evidence in a non-jury trial is not grounds for reversal of judgment unless that evidence appears to have played a critical role in the court's decision. *Id.* Further, courts have shown increased flexibility in admitting a child's statements to others in cases involving emotional or physical abuse of the child. *See id.* at 447.

■ We disagree with K.J.B.'s contention that the hearsay evidence played a critical role in the court's modification.. The trial court entertained abundant testimony and evidence from both parents concerning their son's relationships with family members. K.J.B. extensively cross-examined witnesses who testified about her son's statements. Nothing in the court's findings indicates improper reliance on the hearsay evidence.

■ In reviewing non-jury cases, we presume that the trial court did not give improper weight to incompetent testimony. *McClelland v. Ozenberger,* 841 S.W.2d 227, 231–32 (Mo.App.1992). We find no merit to her first point.

### Assistant Prosecutor's Testimony

K.J.B. next contends that the trial court erroneously excluded the testimony of an assistant prosecuting attorney. At trial, the mother subpoenaed the prosecutor who testified that he had interviewed both parents regarding the allegation of child abuse. The court interrupted when the prosecutor was asked to read from a document in his file. The court had its bailiff read the closed records law to the prosecutor. The prosecutor chose not to testify about the document but continued answering questions about his conversation with C.A.B. The prosecutor

testified that C.A.B. had expressed some disbelief about whether his son had been abused. At that point, the prosecutor asserted his Fifth Amendment right against self-incrimination, so the trial court excluded all of the prosecutor's testimony.

K.J.B. argues that the court misapplied the closed records law in striking the prosecutor's testimony. She contends that nothing in the closed records law prohibits a law enforcement official from providing relevant testimony otherwise admissible under the rules of evidence and that the testimony regarding C.A.B.'s disbelief provided proper impeachment to C.A.B.'s testimony that he had no doubt that the son had been molested. K.J.B. asserts prejudice in that the court's action deprived her of vital evidence to impeach C.A.B.'s credibility.

■ The closed records law in § 610.100, RSMo Cum.Supp.1993,[1] prohibits public disclosure of records of persons arrested but not charged. Violation of § 610.100 constitutes a Class A misdemeanor. Section 610.-115, RSMo 1986. Access to closed records is available to courts and governmental agencies for the limited purposes "of prosecution, sentencing, parole consideration, criminal justice employment, child care employment, nursing home employment," § 610.120, RSMo Supp.1993, none of which apply here.

■ K.J.B.'s suggestion that the prosecutor's testimony was admissible to impeach C.A.B.'s credibility is unfounded because she did not question C.A.B. about the alleged prior inconsistent statement. A witness should not be permitted to testify to a previous witnesses' prior inconsistent statement if the previous witness has not been confronted with the statement and given an opportunity to explain it. *State v. Denmon,* 635 S.W.2d 345, 348 (Mo.1982). We deny the point.

### Recommendations Concerning Custody

K.J.B. contends that the trial court erred in admitting custody recommendations from Angela Pasiglia, a social worker, and Cora

---

1. That statute says, "If any person is arrested and not charged with an offense against the law within thirty days of his arrest, official records of the arrest and of any detention or confinement incident thereto shall thereafter be closed records except that the disposition portion of the record may be accessed for purposes of exculpation and except as provided in section 610.120."

Thompson, a psychotherapist. Pasiglia, who held a master's degree in social work and received training in working with sexually-abused children from the Metropolitan Organization to Counter Sexual Assault, met with K.J.B.'s son six times. At trial, over K.J.B.'s objection, Pasiglia opined that K.J.B. should be allowed no unsupervised visits until she was able to protect her son from sexual abuse. Thompson, who held a Ph.D. degree in Christian counseling and had received training by MOCSA, counseled C.A.B. and the boy in sessions paid for by C.A.B. At trial, without specific objection, Thompson recommended that the court transfer physical custody of the boy to C.A.B.

K.J.B. maintains that Pasiglia and Thompson lacked the credentials to make custody recommendations. She stresses that neither interviewed her or her family and that they based their recommendations on inaccurate information about her. She asserts, therefore, that the recommendations invaded the province of the trial court.

■ Generally, a trial court has full discretion to rule on questions regarding the admission of expert testimony and a witness' expertise. *D.L.H. v. H.T.H.*, 780 S.W.2d 104, 106 (Mo.App.1989). We will reverse the trial court's rulings on these matters only if we find plain evidence that the court has abused its discretion. *M.D. v. C.D.*, 691 S.W.2d 406, 408 (Mo.App.1985). Further, issues concerning an expert's experience or training goes to the weight of the expert's testimony, not to its admissibility. *Hord*, 769 S.W.2d at 448.

■ K.J.B. did not challenge the experts' qualifications and objected only to Pasiglia's recommendation on the ground that it invaded the trial court's province. We conclude that the trial court did not abuse its discretion. In this non-jury case, the trial court could appropriately make its own determination whether the recommendations invaded its province. In cross-examination, K.J.B. established that neither expert had interviewed the mother. The evidence included other expert testimony and reports providing recommendations favorable to the mother. We find no merit to the point.

## Weight of the Evidence

K.J.B. complains that transfer of the boy's custody was against the weight of the evidence. She emphasizes evidence of her son's confusion about being sexually abused, C.A.B.'s manipulation of the sexual abuse claims, and her efforts to protect her son once she learned of the possibility of sexual abuse.

She contends that her son's confusion casts doubts on the occurrence and the extent of the abuse. She noted that social workers and therapists who worked with her son commented that he was often confused and had difficulty distinguishing truth from fiction. He varied in identifying who had inserted objects in his rectum, touched his genitals, and had engaged him in oral sex. He even recanted, saying the incidents never occurred. Other times he refused to discuss the matter.

K.J.B. accuses C.A.B. of manipulating the abuse allegations. She points to evidence that, before filing his modification action, C.A.B. began keeping extensive logs and photographs of the boy's cuts, bruises, and injuries; that he checked out books from the library on sexual abuse to use in discussing the matter with his son; and that his actions raised the suspicions of one social worker.

K.J.B. insists that, once she learned of the alleged abuse, she immediately took steps to protect her son. She said that she barred her brother from any contact with her son and restricted the cousins' visits with her son. DFS workers described the mother as very receptive, cooperative, and determined to protect her son. They said that she complied with all their recommendations.

K.J.B. argues that this evidence contradicts the trial court's findings that her son's health and welfare were in jeopardy and that she was unable to protect her son. She asserts that transferring physical custody to C.A.B. was against the weight of the evidence.

■ In assessing the sufficiency of the evidence, we examine the evidence and its inferences in the light most favorable to the trial court's order. *Long v. Long*, 771 S.W.2d 837, 839 (Mo.App.1989). We defer to

the trial court's assessment of witnesses' credibility and accept the trial court's resolution of conflicting evidence. *W.E.F. v. C.J.F.*, 793 S.W.2d 446, 451 (Mo.App.1990). We presume that the trial court reviewed all evidence and based its decision on the child's best interests. *Hord*, 769 S.W.2d at 450. We will reverse a custody modification on the ground that it is against the weight of the evidence only when we firmly believe that the decision is wrong. *Id.*

■ The evidence upon which K.J.B. relies does not persuade us that transfer of physical custody was against the weight of the evidence. K.J.B. acknowledges, and the medical evidence substantiates, the physical trauma which the son suffered while in her custody. Substantial evidence supports the trial court's finding that the boy's environment posed potentially adverse effects. The trial court heard much evidence supporting each parent's claim to custody. In resolving that conflict, weighing the evidence, and determining credibility, the trial court concluded that the boy's best interests were served by transferring primary custody to C.A.B. We have no basis for a firm belief that the trial court's decision is wrong.

### Calculation of Child Support

In its modification, the trial court ordered K.J.B. to pay monthly child support of $371. In the original decree, C.A.B.'s monthly child support obligation was $268.20, and the court ordered him to pay $37 a month for past due temporary child support.

K.J.B. argues that the trial court erred in ordering her to pay child support because C.A.B. did not submit a Form 14 and because the record does not reveal how the trial court calculated her child support obligation of $371. She notes that her Form 14 calculations showed a combined child support obligation of $686 and that her share, 34 percent, should be $233. Although C.A.B. testified that his earnings were $20,377 for 1992, he provided no other financial information.

■ Section 452.340.7, RSMo Cum. Supp.1993, mandates the use of the child support guidelines in determining the amount of child support. *Vehlewald v. Veh-*

*lewald*, 853 S.W.2d 944, 951 (Mo.App.1993). Section 452.340.8 and Rule 88.01(e) create a rebuttable presumption that the amount calculated under the guidelines is the amount of child support to be awarded. To rebut the presumption, the court must issue a specific finding that the amount calculated under the guidelines would be unjust or inappropriate. *Harding v. Harding*, 826 S.W.2d 404, 407 (Mo.App.1992). Form 14 provides a worksheet for calculating presumed child support. Both parents should submit completed Form 14s. *See Glenn v. Francis*, 864 S.W.2d 947, 950 n. 5 (Mo.App.1993). The record on appeal must demonstrate the basis for the Form 14 calculation. *Id.* at 950. When neither the trial court's order nor the record demonstrates how the court determined the child support ordered, we believe that we must reverse and remand on the matter of child support. *Id.* at 953–54.

We are unable to ascertain from the record in this case the basis for the trial court's setting K.J.B.'s child support obligation at $371 a month. The trial court does not explain why it deviated from the guidelines. The record lacks the data necessary to show that the child support calculation was consistent with Form 14 and complied with Rule 88.01.

We reverse the order on the amount of child support. We remand the matter to the trial court with directions to comply with Rule 88.01(e). The court shall supplement the record with the appropriate findings. The court may, in its discretion, require additional evidence or argument of counsel.

All concur.