### Carroll FICKER, Petitioner/Respondent,

v.

### Dale FICKER, Respondent/Appellant.

### No. ED 77871.

Missouri Court of Appeals, Eastern District, Division One.

Oct. 23, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 13, 2001.

John D. Schneider, St. Louis, MO, for appellant.

Alan W. Cohen, Clayton, MO, for respondent.

**WILLIAM H. CRANDALL, JR.,**
Presiding Judge.

Husband, Dale Ficker, appeals from the judgment of the trial court dissolving his marriage to wife, Carroll Ficker. We affirm.

The parties were married in 1985 and separated in 1999. Four children were born of the marriage: Justin in 1987, Amy in 1989, Shawn in 1991, and Mary in 1995. Throughout the marriage, wife stayed at home and spent an extensive amount of time with the children. She home schooled the children and attended to all their needs, including medical. At the time of trial, the children were attending public school. Throughout the marriage, husband was employed outside the home, sometimes working six days a week. He was in charge of the children's religious instruction. In a letter written to wife after she requested the divorce, husband apologized for his conduct during the marriage. The letter read in part:

> Please forgive me for the total lack of compassion and love. I'm so sorry for cutting & putting you down so many times, complaining how you did things . . . . for thinking I knew what was always right and being so bossy always . . . . for being so controlling, I thought I new [sic] it all . . . . for shouting and yelling so many times at you and the kids, . . . being angry is so so [sic] very terrible . . . . for not taking time out alone with you personally and as a family. . . . I wish I would have tried alot [sic] more to build a loving caring relationship with you and the kids, boy I really messed up. . . .

Prior to, and throughout most of, the marriage, the parties were involved in the Church Universal and Triumphant (hereinafter church). There was extensive testimony at trial regarding the beliefs and practices of the church. Over time, wife began to view the organization as a cult and curbed the family's participation in the church. At trial, husband stated that he was no longer a member of the church. An expert, a psychologist and former church member, testified about the cult nature of the church and about the negative impact of religious cults on the development of the children. The expert also stated that in child custody cases, the church instructed its members to lie about their affiliation with the church. The court appointed a Guardian Ad Litem (hereinafter GAL) to represent the interests of the children.

The Family Court Commissioner (hereinafter commissioner) entered findings and recommendations. The commissioner, among other things, awarded wife child support and maintenance; divided the marital property and debts; and awarded joint legal custody to both parties and primary physical custody to wife, with temporary custody and visitation to husband. Husband filed a motion to amend the judgment or, in the alternative, a motion for rehearing before an Article V judge pursuant to section 487.030.2, RSMo (2000). The trial court denied the motions and entered judgment, adopting and con-

firming the commissioner's findings and recommendations.

In his first point, husband asserts the trial court erred in admitting testimony about the beliefs and practices of the church. His challenge to the admission of such testimony is two-pronged: it not only was inadmissible evidence, but also played a critical role in the court's decision.

■ Our review is governed by the principles enunciated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We do not retry the case, rather we accept as true the evidence and reasonable inferences therefrom in the light most favorable to the prevailing party and disregard contradictory evidence. *L.J.B. v. L.W.B.*, 921 S.W.2d 23, 24 (Mo.App. E.D.1996). We recognize the superior position of the trial court to judge factors such as credibility, sincerity, character of the witnesses, and other intangibles that are not revealed in a trial transcript. *Id.*

■ In litigation involving the issue of child custody, the welfare of the children is the paramount consideration. *Babe v. Babe*, 784 S.W.2d 898, 899 (Mo.App. E.D. 1990). Because the trial court has an affirmative duty to determine what is in best interests of the children, we presume that the custody decision is motivated by what the court believes is best for the children. *Id.* We therefore accord the court's determination greater deference than in other cases. *Id.* Thus, an appellant faces a heavy burden to overturn the trial court's decision relating to an award of child custody. *Id.*

■ A court's inquiry into religious beliefs *per se* is unquestionably improper. *Edwards v. Edwards*, 829 S.W.2d 91, 93 (Mo.App. E.D.1992). Any suggestion that a state judicial officer was favoring or tending to favor one religious persuasion over another in a child custody dispute would be intolerable to our system of law. *Waites v. Waites*, 567 S.W.2d 326, 333 (Mo. banc 1978). Judges should not even give the appearance of such preference or favor. *Id.* But, inquiry into matters of child development as impinged upon by religious convictions is permissible. *Id.* Moreover, the admission of improper evidence is not ordinarily a ground for reversal in a nonjury case where it does not appear to have played a critical role in the court's decision. *Edwards*, 829 S.W.2d at 92.

■ In the instant action, there was substantial evidence that the church was not a religion, but was in actuality a cult. There also was evidence that religious cults have an adverse impact on the development of children. Based upon that evidence, the court did not err in admitting evidence regarding the church's practices and beliefs. *See Edwards*, 829 S.W.2d at 93.

Even if we assume that the trial court improperly admitted evidence regarding religion, the record as a whole does not support the conclusion that such evidence played a critical role in the court's decision to award wife primary physical custody. There was substantial other evidence in the record to support the court's decision. At husband's request, mother remained at home during the marriage until the pendency of this action. She spent an extensive amount of time with the children, caring for them and home schooling them. In contrast, husband was employed out of the home and sometimes worked overtime. The court concluded that wife had been "the caregiver to the children, almost exclusively, in regards to their schooling and rearing within the home, with [husband] setting many of the rules, which [wife] would then implement." This is not a situation where the trial court's reason for awarding custody was the religious persuasion of either party. *But see Waites*, 567

S.W.2d at 326 (mother's identity as a Jehovah's Witness was basis for awarding custody of the children to father). Rather, there was sufficient evidence in the record that the best interests of the children would be served by awarding primary physical custody to wife.

■ In addition, husband's arguments with regard to the factors demonstrating that religion played a pivotal role in the court's decision to award wife primary physical custody are without merit. He points to the court's finding that it was not in the best interests of the children to be raised in the church as indicative of how critical evidence of religion was to the court's determination of custody. We disagree with husband's characterization of the court's finding. The court specifically found, "The parties have stipulated by their testimony, and the Court does find, that it is in the best interest of the children that the children not be raised, not attend services or activities nor be schooled in the teachings of the Church Universal and Triumphant." Husband ignores the initial phrase, "[t]he parties have stipulated by their testimony." Here, both husband and wife testified that they were no longer practicing members of the church. Husband stated that he would not raise the children in the church if he was granted primary custody. In light of husband's own testimony that he was no longer affiliated with the church, the court's finding about the religious upbringing of the children resulted in no prejudice to him.

Husband also contends the failure of the trial court to award joint physical custody evinces its reliance on evidence about religion in making its custody award. We acknowledge that section 452.375.4, RSMo (2000) sets forth the declaration of the Missouri legislature "that it is the public policy of this state that frequent, continuing and meaningful contact with both parents after the parents have separated or dissolved their marriage is in the best interest of the child, ... and that it is in the public policy of this state to encourage parents to participate in decisions affecting the health, education and welfare of the children...." In order to effectuate this policy, the trial court is directed to consider joint custody prior to making any award of custody. Section 452.375.5, RSMo (2000). The statute, however, does not create a presumption in favor of joint custody, although it does require that the option be considered. *Schwartzkopf v. Schwartzkopf*, 9 S.W.3d 17, 21 (Mo.App. E.D.1999). In light of the extensive role wife played in caring for and educating the children during the marriage, the trial court did not err in awarding her primary physical custody.

Finally, husband argues that a further indication of the court's reliance on evidence about religion was the court's disregard for the recommendation of the GAL regarding custody. The GAL proposed the following custody arrangement: every other weekend beginning at 5:00 p.m. on Thursday until 8:00 a.m. Monday; two nights every other week from 5:00 p.m. Tuesday until 8:00 a.m. Thursday; and six weeks each summer, in addition to certain holidays. The court ordered the following plan: every other weekend beginning at 6:00 p.m. on Friday and ending at 6:00 p.m. on Sunday; each Wednesday from 6:00 p.m. until 8:00 a.m. on Thursday; and six weeks each summer, with the same plan as the GAL for holidays. The court was not bound by and could accept, modify, or reject the GAL's recommendations as it deemed appropriate. *In re Marriage of Sisk*, 937 S.W.2d 727, 733 (Mo.App. S.D. 1996). Thus, the court was free to modify the GAL's proposed parenting plan and there is no indication from the record that

the plan, as set forth in the judgment, was the result of the consideration of the evidence regarding religion. Husband's first point is denied.

 In his second point, husband avers the trial court erred in denying without a hearing his motion for a rehearing before an Article V judge, because it denied him due process of law. Husband's "motion specifically sought [a] hearing regarding the Findings and Recommendations of the Commissioner."

Section 487.030.2 gives the parties to an action heard by a commissioner the statutory right to file with the court a motion for a hearing by a judge of the family court within 15 days after receiving notice of the findings of the commissioner. The statute states that the "judge shall promptly rule on such motion and, in his discretion, may either sustain or deny the motion, and if the motion is sustained, the judge shall set a date for a hearing." Section 487.030.2.

We note that husband did not raise the due process challenge below. A trial court cannot be faulted for failing to take corrective action that it was not asked to take; a party's failing to object at trial results in no issue being preserved for appellate review. *Norris v. Barnes,* 957 S.W.2d 524, 527 (Mo.App. W.D.1997). Thus, husband's due process claim based on the judge's denial of his motion without a hearing is not preserved for our review.

In addition, husband was accorded due process. He was given a full and fair hearing before a family court commissioner, who made extensive findings of fact and conclusions of law. A judge of the family court considered and denied his motion for rehearing. *See Fowler v. Fowler,* 984 S.W.2d 508, 511 (Mo. banc 1999) (a judge must rule on a motion for rehearing). Section 487.030.2 provides not only that the judge is vested with discretion with regard to granting or denying such a motion, but also that the judge shall grant a hearing only if he or she sustains the motion. In the instant action, the court adhered to the statute. Husband's second point is denied.

The judgment of the trial court is affirmed.[1]

KATHIANNE KNAUP CRANE and ROBERT G. DOWD, JR., JJ., concur.

---

1. Wife's motion to dismiss husband's appeal for failure to comply with Rule 81.04 and motion to dismiss and for attorney's fees for frivolous appeal are denied.