Libbie Anita TURPIN, Petitioner-Respondent,

v.

John Franklin TURPIN, Respondent-Appellant.

No. KCD 29708.

Missouri Court of Appeals, Kansas City District.

Aug. 28, 1978.

M. Sperry Hickman, M. Sperry Hickman, Inc., Independence, for respondent-appellant.

F. Keith Brown, Russell, Brown, Bickel & Breckenridge, Nevada, for petitioner-respondent.

Before SHANGLER, P. J., SWOFFORD, C. J., and WASSERSTROM, J.

SWOFFORD, Chief Judge.

This is a dissolution of marriage proceeding that comes to this Court upon a most unique record. The action was filed by the respondent-wife in February of 1977. In her petition, she alleged that the parties were married on January 14, 1964 and were separated on February 18, 1977; that there were two children born of the marriage, Dollie Renee Turpin born October 1964 and Sandra Sue Turpin, born January 1966; that in addition, Gary Dale Turpin, born June 1968, a foster child, is a member of the

household and she has cared for him since he was six months old; that no contractual arrangements have been made between the parties as to custody and support of the children, maintenance of the wife, or division of marital property; and, that the marriage is irretrievably broken. She requests a decree of dissolution and custody of the children (including the foster child) subject to reasonable visitation; child support for the natural children; temporary support and maintenance for herself; division of marital properties and assets; approval of any settlement agreement which might be concluded between the parties and to set forth the terms thereof in the decree and order the parties to fully perform the same; and, attorneys' fees and costs.

In March 1977, the appellant-husband filed his answer to this petition in which he admits the historical data concerning the marriage and all formal allegations. He also admits the existence of marital property and states there are also separate properties of the parties. He denies that the best interests of the natural children and the foster child would require that custody be awarded to the wife and asks that he be granted their care and custody. He further denied (a rather incomprehensible allegation) the wife's request for a decree of division of marital property or approval of any future settlement agreement.

His answer further admitted that the marriage was irretrievably broken but denied any misconduct on his part.

The matter came on for hearing on June 14, 1977 and the wife appeared in person and by counsel. The husband also appeared in person and by counsel, who, it later developed in the record, was also his banker. He is presently represented by other counsel.

The only evidence, oral or documentary, introduced at the hearing was the testimony of the wife, which consists of three transcript pages covering the formal elements of her case and that the marriage was irretrievably broken. She asked for the custody of the two natural born children and $240.00 per month for their support. Her examination concluded with this:

"Q. (By Mr. Brown) Now, you and your husband have entered into an agreement with regard to disposition of property and we are prepared to stipulate this before the Court today, is that correct?

A. Yes."

Mr. Irvin, counsel for the husband, when invited to cross-examine, stated, "No, I have no questions". The transcript then discloses that the following occurred:

"THE COURT: Now, if you would, Mr. Irvin (counsel for husband), like to stipulate to the Court what the property settlement is in the record, it would be fine.

MR. BROWN: (Counsel for wife) Yes, Your Honor. It is stipulated by and between the parties that the dissolution should be granted, custody of the two minor children aforementioned shall be placed with the wife, subject to visitation rights of the husband, to-wit: the first and third weekend of each month, from 8:00 a. m. Saturday morning to 8:00 p. m. Sunday evening; and then during the month of July the children shall be with the husband."

Mr. Brown then related the stipulation as to division of property, including two residential properties, and as to costs and attorneys' fees, and present and future debts of the parties. Thereupon, the record shows the "EVIDENCE CLOSED". The Court thereupon made the following findings:

"THE COURT: The Court is going to find the marriage to be irretrievably broken and will grant the dissolution of marriage. *The Court awards care, custody and control of the children to the petitioner, with the respondent to have visitation as outlined in the stipulation.*

*The Court awards child support in the sum of $240.00 per month payable through the Court.*

*The Court finds the property settlement not to be unconscionable and it is hereby approved.*

$120.00 will be due the 15th, and then $240.00 on the 1st day of August, and on

the 1st day of each month thereafter." (Emphasis added)

A Docket Entry was made the day of the hearing basically incorporating the above findings, and concluding with the cryptic statement, "Court approves property settlement".

On June 20, 1977, the husband, with new counsel, filed in the court below a pleading captioned "Motion to Set Aside and Vacate the June 14, 1977 Default Judgments and Orders Herein, For Change of Judge, Or in the Alternative, Notice of Appeal".

This motion requests a full evidentiary hearing on the issue of child custody; asserts that the wife is unfit as custodian of the children by reason of an extramarital affair with one Bob Clark; and, alleges that the terms of the property settlement will force him to discontinue his business as building contractor. The basis for his request that the decree of June 14, 1977 be set aside is that he was placed in the position in pre-trial conference with the trial court, parties and counsel where he was coerced or pressured into a reluctant agreement to the settlement in that the Court had apparently decided how it would rule the case; that he, the husband, did not fully comprehend the terms of the settlement nor the consequences thereon on his children, himself or his business; and, that his then attorney, Roger Irvin, was never authorized to make any agreement as to custody or division of marital property on his behalf.

The record does not show that any notice was given to the wife or her counsel of the hearing on the motion, which was held on July 15, 1977. Neither the wife nor her counsel appeared at this hearing.

The husband testified in support of his motion at considerable length but no useful purpose will be served here by a review thereof except to note that under questioning by the trial court, he admitted conferring with his counsel-banker, Mr. Irvin, on the morning preceding the pre-trial conference with regard to settlement terms; that the attorneys supplied the Court with a list of the parties' assets and liabilities, which were discussed in chambers, although the list contained an error in computation of $13,000.00 "in the wife's favor"; that he told the Court the wife was a good mother for the children; and, that he had stated to the Court that he understood the settlement proposal and it was agreeable with him, that "he guessed it would be all right".

At the conclusion of this testimony, counsel for the husband called the Court's attention to the fact that no formal decree had been entered following the original hearing. The Court responded that such a decree would be entered. The transcript then contains an undated "Decree of Dissolution of Marriage" with the notation that it was filed "on a date that cannot be determined", which incorporates the terms substantially as stipulated at the original hearing of June 14, 1977. The Amended Notice of Appeal includes an appeal from the judgment of June 14, 1977 and "July 28, 1977". No question is raised as to the sufficiency or timeliness thereof.

The first point raised by the husband as appellant herein is that the Court erred in awarding custody of the children to the wife because there was no evidence from which to make such an award which is a necessary prerequisite upon which to base a finding as to the best interests of the children.

Indeed, this record is absolutely devoid of any evidence whatsoever upon which to base the trial court's award of custody in this case, except the purported agreement between the parents, which is suspect in light of the husband's present position. This nebulous "agreement" is the only one of the factors which, under the provisions of Section 452.375 RSMo 1969 (Laws 1973), the trial court "shall consider" in awarding custody, i. e. "(1) The wishes of the child's parents as to his custody". Such an agreement, if indeed it existed, would not be binding on the Court. *Ex parte McCarter,* 434 S.W.2d 14, 17[4] (Mo.App. 1968). As this Court en banc stated in *In the Matter of W___ K___ M___,* 537 S.W.2d 183, 185–186[4] (Mo.App.1976):

" * * * Custody of infants cannot be bartered and traded as goods in the market place, so as to foreclose a judicial determination as to the present welfare and best interests of the child."

Cf. *Flickinger v. Flickinger*, 494 S.W.2d 388 (Mo.App.1973).

Many factors must be considered in a proceeding involving the custody of children focused upon the tantamount and overriding consideration as stated in the first sentence of Section 452.375: "The Court *shall* determine custody in accordance with the best interests of the child" (Emphasis added). Such legislative mandate has long been reflected in decisional law both under the former divorce proceedings and the present Dissolution of Marriage law. Even the rights and claims (and agreement) of the parents must be, perforce, of secondary importance. *E. W. v. K. D. M.*, 490 S.W.2d 64, 67[5, 6] (Mo. banc 1973); *Stockton v. Guthary*, 415 S.W.2d 308, 311[1, 4] (Mo.App.1967).

The absolute duty thus placed upon the trial court pertaining to the custody of children, caught in the vortex of divorce proceedings, cannot be abdicated, relinquished or diminished because of extrajudicial agreements of the parents, as was done in this case. The appellant's first point is well taken.

For his second (and last) point, the husband-appellant urges that the Court erred in finding that the oral stipulation read into the record concerning division of marital property was not unconscionable and in adopting same because there was no evidence to support such finding and the court lacked jurisdiction to approve such unsupported oral division which was required to be in writing by Section 452.325 RSMo 1969 (Laws 1973).

In approaching a decision on this point, it is pertinent to note that under Section 452.-330 RSMo 1969 (Laws 1973) it is made the duty of the trial court to "divide the marital property in such proportions as the court deems just after considering all relevant factors including:" four specific areas of consideration. These are set out in the statute (here stated in summary) as (1) contributions of each spouse; (2) value of the property; (3) economic circumstances of each spouse; and (4) conduct of the parties during the marriage.

In the case of *Corder v. Corder*, 546 S.W.2d 798 (Mo.App.1977), this Court stated that this section (l. c. 804[4]):

" * * * seeks to redress the patent inequity and rancorous aftermath heretofore attached to the division of property accumulated during the course of a marriage which now falls within the definition of 'marital property'. By the same token, it seeks to effectively minimize the necessity for recourse to further litigation to completely sever all relations between the parties. * * * "

This Court further held in *Corder* (l. c. 804[6]):

" * * * the trial court had no discretion or leeway to divide or not divide the 'marital property' on a 'just' basis, it was inexorably commanded to do so * * * "

Such "command" necessarily carries with it the obligation to consider, at the very minimum, the areas set forth in Section 452.330. None of these were covered in either the so-called oral agreement dictated into the record or in the record or transcript on appeal. Whatever transpired in the pretrial conferences in chambers was not made a part of this record, and of course, this Court, therefore, is without any means to review such division or judge its propriety.

Section 452.325 RSMo 1969 (Laws 1973) provides, in part:

"1. To promote the amicable settlement of disputes to a marriage attendant upon their separation or the dissolution of their marriage, the parties may enter into a *written* separation agreement containing provisions for * * * the disposition of any property owned by either of them

* * * * * *

2. In a proceeding for dissolution of marriage, the terms of the separation agreement * * * are binding upon

the court unless it finds *after considering the economic circumstances of the parties* and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the separation agreement is unconscionable. * * * " (Emphasis added)

The so-called agreement in the case at bar consisting of the oral statement of counsel as it pertained to property is as follows:

"MR. BROWN: (Counsel for wife) * * The wife shall receive all household goods and contents, including furniture and appliances, and all contents of the home. She shall receive a 1972 Chevrolet station wagon and one Benelli motorcycle and one Suzuki motorcycle, and the husband shall execute his promissory note to the wife in payment of an additional cash settlement of $7200.00 principal, bearing eight percent interest, payable $100.00 monthly payment and the remaining balance applied to principal. At the end of two years the note shall be due and payable. There is a privilege to pre-pay without penalty. The note shall be secured by a second deed of trust on the home located in Butler, at 400 South Mechanic, and it shall only be second to a first mortgage presently held by Mr. Robinson in the sum of $3688.00.

Each party will pay their own attorney fees. The husband shall pay all debts of the marriage and all debts through April 15, 1977. Any debts accrued after April 15, 1977, by the wife alone, shall be paid by the wife. The husband agrees to hold her harmless from all these debts, as well as costs, attorneys fees or any other matter that might accrue as the result of someone trying to attempt to collect the debts from her.

The husband shall in turn receive the home located in Butler, at 400 Mechanic, the home located in Amoret, his carpenter tools, his 1972 pickup truck, one Tradewinds fold-out camper; any moneys presently in his bank accounts or in financial institutions; his life insurance policies. * * * "

The terms of the statute are plain and unambiguous that the separation agreement must be in writing and there is no room or need for judicial interpretation here. This agreement, made the day of the trial, was not written (indeed, if such an agreement was in fact reached). The trial court simply adopted it without evidence or other information (so far as appears from this record) as to the factors which required its consideration even had the purported agreement been reduced to writing before the Court could determine whether or not such written agreement was conscionable or unconscionable, as it was the Court's statutory duty to do. It is true, as the wife-respondent stoutly asserts, that the husband and his counsel raised no objection and sat mute during the recitation by her counsel. Indeed, the husband was not asked, on the record at least, by court or counsel if he did in fact agree to the division.

Further, both the oral recitation of the purported agreement and the decree appealed from completely lack the specificity necessary to eliminate "rancorous aftermath" or to "effectively minimize the necessity for recourse to further litigation" or to "completely sever all relations between the parties", particularly as the same relates to the two pieces of real estate involved which were so vaguely described so as to fail to completely vest title thereto in the husband, as against the world.

The necessity and practicability of such requirement that the agreement be reduced to writing is pointed up by the fact that six days after the approval of the agreement, the husband repudiated it *in toto.*

This Court does not approve or condone the procedures here employed by both Court and counsel and reluctantly holds that the appellant's second point is well taken.

The judgment below as it declares the dissolution of the marriage is affirmed. The judgment below as it relates to child custody and support and division of marital property, costs and attorneys' fees, is re-

versed and remanded for further evidentiary proceedings.

All concur.