Larry D. KELING, Respondent,

v.

Carol L. KELING, Appellant.

No. ED 83915.

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 1, 2005.

Michele Hammond, Scot C. Trout, Cordell & Cordell, P.C., St. Louis, MO, for Appellant.

Richard K. Zerr, Burke, Zerr, Wulff & Briscoe, LLP, St. Charles, MO, for Respondent.

GARY M. GAERTNER, SR., Presiding Judge.

Appellant, Carol Keling ("Wife"), appeals from the judgment of the Circuit Court of St. Charles County dissolving her marriage to Respondent, Larry Keling ("Husband"). We affirm in part and reverse and remand in part.

Husband and Wife were married on March 5, 1983 in St. Charles, Missouri. Eric Keling ("Eric"), born on March 20, 1993, and Sommer Keling ("Sommer"), born on July 17, 1998, are the only two children born of the marriage. The parties separated on or about September 17, 2002. Husband filed a dissolution of marriage petition on September 19, 2002.

In November of 2002, Wife filed a "Motion For Appointment Of Guardian Ad Litem" alleging that Husband, during the period from September 15, 2002 through October 13, 2002, became angry and lost his self-control in front of the minor children. She also alleged that Husband has been verbally abusive to her, and that he had awoken Eric and told him that Wife was performing sex acts with another man. Lastly, she alleged that Husband was calling her derogatory names in the presence of the minor children. As a result, a guardian ad litem was appointed by the court to represent the interests of the children pursuant to section 452.423, RSMo 2000.[1] On November 13, 2002, Christine Hendrix ("Hendrix") filed a consent to appointment as guardian ad litem, agreeing to represent Eric and Sommer in the proceeding. Less than three weeks later, Hendrix sought to be released from the case stating that she could not sub-

stantiate the allegations of neglect or abuse after interviewing Husband, Wife and Eric. Sommer was not interviewed by Hendrix. The court ordered that Hendrix be released from the case on December 13, 2002, and the trial was conducted without a guardian ad litem present to represent the interests of the minor children.

On December 19, 2002, the parties entered into a consent judgment pending the dissolution proceeding. The consent judgment granted Husband and Wife joint legal and joint physical custody of the parties' children, who were to reside with Husband, subject to Wife's periods of physical custody as set forth in a schedule. On December 2, 2003, subsequent to a bench trial, the court entered its judgment finding that it was in the best interests of the children to place them in the sole legal and physical custody of Husband, subject to Wife's rights of temporary custody and visitation. The court believed that due to the "history of domestic violence" between Husband and Wife and their failure to communicate concerning the children, it would be inappropriate to order joint legal and physical custody.

Wife, a trained dental assistant, was imputed gross monthly earnings of $2,427. Husband was imputed gross monthly earnings of $4,606. Wife was ordered to pay Husband $458 per month for child support. This appeal followed.

In reviewing this case, we must affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *McCallum v. McCallum*, 128 S.W.3d 62, 65 (Mo. App. E.D.2003). We view the evidence and the reasonable inferences therefrom in the light most favorable to the prevailing

1. All statutory references are to RSMo 2000 unless otherwise indicated.

party. *Id.* The party that challenges the dissolution decree has the burden of demonstrating error. *Id.* at 66.

We will first address Wife's fourth point on appeal.

■ In her fourth point on appeal, Wife claims the trial court erred in ordering the release of the guardian ad litem prior to the hearing.

■ A party is not entitled to have allegations of error considered on appeal if they were never presented to or passed on by the trial court. *In re Marriage of Campbell,* 868 S.W.2d 148, 151 (Mo.App. S.D.1993). However, pursuant to Rule 84.13(c), we can review issues not preserved in the trial court to determine if plain error was committed affecting substantial rights which resulted in a manifest injustice or a miscarriage of justice. *Id.*

There is no indication in the record that an objection was made by Wife concerning the court's decision to release the guardian ad litem prior to trial. Thus, Wife failed to preserve this point for appeal as it was not presented to or expressly passed on by the trial court. Nevertheless, because the best interests of the children are involved, we elect to review the point on appeal for plain error pursuant to Rule 84.13(c).

"The guardian ad litem shall: (1) Be the legal representative of the child at the hearing, and may examine, cross examine, subpoena witnesses and offer testimony; (2) Prior to the hearing, conduct all necessary interviews with persons having contact with or knowledge of the child in order to ascertain the child's wishes, feelings, attachments, and attitudes. If appropriate, the child should be interviewed...." Section 452.423.2.

■ When we interpret a statute, our primary role is to determine the intent of the General Assembly from the language used in the statute and, whenever possible, give effect to that intent. *Harrison v. King,* 7 S.W.3d 558, 561 (Mo.App. E.D. 1999). In ascertaining legislative intent, the words present in the statute are to be considered in their plain and ordinary meaning. *Id.* If the language of a statute is clear and unambiguous, we will give effect to the language as written and will not turn to statutory construction. *Id.*

■ The objective in appointing a guardian ad litem is to make certain that the child's best interests are adequately represented and protected. *Ludvik v. Ludvik,* 969 S.W.2d 284, 286 (Mo.App. E.D.1998).

Wife argues that because the guardian ad litem was released prior to the hearing, this violated the mandate of RSMo 452.423.2 that the appointed guardian ad litem shall be the legal representative of the child at the hearing. We agree.

It is clear from the language of section 452.423.2 that the statute requires the appointed guardian ad litem to represent the children *at the hearing.* Husband contends that Hendrix was acting in good faith by asking to be released of her guardian ad litem duties prior to the hearing in order to prevent the run up of guardian ad litem fees to be paid by Husband and Wife. This is irrelevant. The best interests of the children are paramount here, and it is the duty of the guardian ad litem to protect the interests of the children. *See Wilkinson v. DeClue,* 890 S.W.2d 774, 776 (Mo.App. E.D.1995).

Furthermore, manifest injustice is present in this case. Hendrix based her decision to seek withdrawal, prior to the hearing, on her interviews with Husband, Wife, and Eric. No guardian ad litem was present at the hearing to have the opportunity to examine or cross-examine witnesses and listen to all of the evidence. The evidence

at the hearing included the testimony of Dr. Linda Partridge ("Dr.Partridge"), the children's therapist, who stated that she saw signs of trauma in both children as a result of Husband's behavior. Hendrix was not available to question this witness as she had already been released from the case, nor did Hendrix ever speak to Dr. Partridge.

In Hendrix's motion to be released from the case, she simply stated that she was "unable to substantiate any conduct that would rise to the level of abuse and/or neglect on the part of either party that would necessitate the continued involvement of a Guardian ad Litem in this case." None of the friends and relatives of Husband and Wife who testified at trial were questioned by Hendrix, and, again, neither was Dr. Partridge. Especially in light of the "history of domestic violence" between the parties, this case begged for careful consideration by the appointed guardian ad litem. Hendrix did not complete the duties of a guardian ad litem set out in section 452.423.2. Therefore, the trial court committed plain error in releasing Hendrix from her duties as a guardian ad litem prior to the hearing, which resulted in no guardian ad litem representing the interests of the children at the hearing. As a result of this finding, Wife's first, second and fifth points on appeal, which are contingent upon the custody determination, need not be addressed.

 In her third point on appeal, Wife asserts that the trial court erred in imputing income of $2,427 per month to her. Wife argues that there was no evidence that she was purposefully limiting her income to evade her responsibility to her children.

 A spouse cannot avoid responsibility to his or her family by deliberately limiting his or her work to reduce income. *In re Marriage of Graham*, 87 S.W.3d 898,

900 (Mo.App. E.D.2002). A trial court may, in proper circumstances, impute income to a spouse according to what the spouse could earn by use of his or her best efforts. *Id.* Deference is given to the trial court's ability to judge the credibility of witnesses. *Bauer v. Bauer*, 28 S.W.3d 877, 888 (Mo.App. E.D.2000).

The trial court imputed earned income of $2,427.00 per month to Wife based upon full-time employment at $14.00 per hour as a trained dental assistant in arriving at Wife's child support obligation. Wife testified that she makes $14.00 per hour as a dental assistant. Wife claimed she had not sought full-time work because she "chose to live more frugally so [she] would have more time with [her] children." The trial court was entitled to disbelieve Wife's explanation as to why she was not working full-time. Furthermore, Wife admitted there are other jobs available to her for which she is electing not to apply. Therefore, the court did not err by imputing $2,427.00 per month in income to Wife. Point denied.

Judgement is affirmed in part and reversed and remanded in part for further proceeding in accordance with this opinion.

SHERRI B. SULLIVAN, J. and BOOKER T. SHAW, J., concur.