**Michael E. LINDSEY, Appellant,**

v.

**Zina A. LINDSEY, Respondent.**

**No. ED 94281.**

Missouri Court of Appeals,
Eastern District,
Division Five.

March 22, 2011.

Michele Hammond, St. Charles, MO, for appellant.

Joshua G. Knight, St. Charles, MO, for respondent.

PATRICIA L. COHEN, Judge.

### *Introduction*

Michael Lindsey (Husband) appeals the Circuit Court of St. Charles County's Judgment and Decree of Legal Separation. Husband first claims that the trial court erred in denying his Motion to Set Aside the Default Judgment because Husband: (1) sufficiently alleged good cause and a meritorious defense; and (2) was entitled to an evidentiary hearing to prove his allegations.[1] Second, Husband contests the underlying judgment, claiming that the trial court erred in: (1) conducting a trial on child custody issues without the presence of the guardian ad litem (GAL); (2) granting Zina Lindsey (Wife) sole physical and legal custody of the parties' minor son, D.L.; (3) granting a disproportionate division of the marital property in favor of Wife; (4) ordering Husband to pay Wife $1,948 per month in maintenance; and (5) ordering Husband to pay Wife $5,000 in attorney's fees and $1,199 in court costs. We affirm.

---

1. Husband styled his Motion to Set Aside the Default Judgment as follows: Petitioner's Motion to Set Aside Default Judgment of Legal Separation Entered on December 3, 2009 Pursuant to Missouri Supreme Court Rule 74.05(d) or in the Alternative Motion for a New Trial Pursuant to Missouri Supreme Court Rule 75.01.

## Background

On May 13, 2009, Husband filed a petition for dissolution of marriage from Wife, whom he married on August 3, 1991. In response, Wife filed an answer to Husband's petition as well as a cross-petition for legal separation. Thereafter, Husband filed an answer to Wife's cross-petition. Neither Wife nor Husband's pleadings contained allegations of child abuse or neglect.

Prior to trial, the trial court appointed a GAL to represent Husband and Wife's minor son, D.L. The trial court also entered an order and judgment pendente lite (PDL Order), which awarded Wife sole physical custody and Husband visitation and temporary custody of D.L. pending the litigation. The PDL Order further ordered Husband to pay Wife $639 and $500 in monthly child support and maintenance, respectively.

On August 7, 2009, Husband's counsel filed a motion to withdraw as attorney of record, citing Husband's cessation of all communication with counsel and failure to comply with counsel's fee agreement. The trial court granted the motion. Thereafter, on November 3, 2009, the trial court found Husband in contempt for failing to abide by the terms of the PDL Order and ordered him to pay Wife $3,946 in attorney's fees. The trial court also ordered Husband to pay $600 in costs associated with Husband's failure to attend a deposition requested by Wife. On November 13, 2009, the trial court struck Husband's pleadings as a sanction for Husband's failures to comply with Wife's discovery requests.

On November 18, 2009, Wife and her attorney appeared before the trial court on her cross-petition for legal separation. Neither Husband nor the GAL appeared for trial. The trial court heard evidence from Wife and entered its Judgment and Decree of Legal Separation on December 3, 2009. In its judgment, the trial court awarded Wife sole legal and physical custody and Husband reasonable rights of visitation and temporary custody of D.L.; divided the parties' assets and debts; ordered Husband to make monthly payments to Wife of $724 in child support and $1,948 in maintenance; and ordered Husband to pay Wife $5,000 in attorney's fees and $1,199 in court costs.

After the trial court entered its judgment, Husband filed his Motion to Set Aside the Default Judgment, which the trial court denied. Husband appeals.

## Standard of Review

 We affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *McCallum v. McCallum*, 128 S.W.3d 62, 65 (Mo.App. E.D. 2003) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). In our review, "[w]e do not retry the case, rather we accept as true the evidence and reasonable inferences therefrom in the light most favorable to the prevailing party and disregard contradictory evidence." *McCallum*, 128 S.W.3d at 65. The party challenging the decree of legal separation has the burden of demonstrating error. *Id.* at 66.

## Discussion

### 1. Default Judgment

 In his first and second points, Husband claims that the trial court erred in denying his Motion to Set Aside the Default Judgment because he: (1) sufficiently alleged good cause and a meritorious defense; and (2) he was entitled to an evidentiary hearing to prove his allegations of good cause and a meritorious defense. In his Motion to Set Aside the Default Judg-

ment and in this appeal, Husband presumes that the trial court's Judgment and Decree of Legal Separation was a default judgment because the trial court struck his pleadings and he did not appear at trial. As a result, Husband's Motion to Set Aside the Default Judgment and his first and second points rely exclusively on Rule 74.05(d) (2010), which permits a trial court to set aside a default judgment upon a motion stating facts constituting a "meritorious defense" and for "good cause."

■ Rule 74.05, however, is inapplicable here because the trial court's Judgment and Decree of Legal Separation was not a default judgment. *See MBNA Am. Bank v. Montgomery,* 269 S.W.3d 536, 539 (Mo. App. S.D.2008) ("Rule 74.05 applies only to default judgments."). Where, as here, a party has filed pleadings, a judgment entered in the case is a judgment on the merits, not a default judgment. *MBNA Am. Bank,* 269 S.W.3d at 539; *See* Rule 74.05(a). This is true even where the party fails to appear for trial. *Id.* "The rule continues to be that where a party ... files a petition, then files an answer to a cross-petition, but fails to appear for trial, the judgment is not a default judgment but, rather, is a judgment on the merits." *Cotleur v. Danziger,* 870 S.W.2d 234, 237 (Mo. banc 1994).

Similarly, Rule 74.05 is inapplicable where a trial court strikes a party's pleadings and enters judgment as a sanction for the party's failure to comply with a discovery order. *DuPont v. Bluestein,* 994 S.W.2d 96, 97 (Mo.App. S.D.1999). "The default rule does not apply because the judgment does not come by default in the ordinary sense, but is a judgment upon a trial by the court." *Id.* Because the Judgment and Decree of Legal Separation was a judgment on the merits, Rule 74.05 has

no application in this case and the trial court did not err in denying Husband's Motion to Set Aside the Default Judgment. Points denied.

### 2. GAL's Absence at Trial

■ In his third point, Husband contends that the trial court erred in holding a trial concerning child custody issues without the presence of the GAL. More specifically, Husband claims that the GAL's appearance at trial was necessary to adequately protect D.L.'s best interests and that Mo.Rev.Stat. § 452.423 (Cum. Supp.2009) requires the GAL to be present at trial.[2] In response, Wife asserts that the GAL's presence at trial was unnecessary because neither Husband nor Wife alleged either child abuse or neglect.

■ As an initial matter, we find that Husband failed to preserve this issue by failing to object at trial to the GAL's absence. *See, e.g., Francka v. Francka,* 951 S.W.2d 685, 692 (Mo.App. S.D.1997). "A party is not entitled to have issues considered on appeal which were never presented to or passed on by the trial court." *Id.* (quoting *In re Marriage of Campbell,* 868 S.W.2d 148, 151 (Mo.App. S.D.1993)). Pursuant to Rule 84.13(c), however, we may review issues not preserved in the trial court to determine if plain error was committed affecting substantial rights which resulted in a manifest injustice or a miscarriage of justice. *In re Marriage of Demorrow,* 169 S.W.3d 591, 593 (Mo.App. S.D.2005). Given the circumstances of this case, we find neither a manifest injustice nor a miscarriage of justice.

■ "The duty of a guardian ad litem is to protect the best interests of a child." *Guier v. Guier,* 918 S.W.2d 940, 950 (Mo. App. W.D.1996). Appointment of a GAL is mandatory in any proceeding in which a

---

**2.** All statutory citations are to Mo.Rev.Stat. (2000), unless otherwise indicated.

party alleges either child abuse or neglect. Section 452.423.2. Otherwise, appointment of a GAL is within the trial court's discretion. Section 452.423.1. If a GAL is appointed, the GAL serves as "the legal representative of the child at the hearing, and may examine, cross-examine, subpoena witnesses and offer testimony." Section 452.423.3(1).

In support of his position that the trial court erred in holding a trial on custody issues without the presence of the GAL, Husband relies on *Keling v. Keling*, 155 S.W.3d 830 (Mo.App. E.D.2005). *Keling* involved a dissolution case where the wife alleged that her husband had physically abused her and her minor children and the trial court appointed a GAL to represent the children during the proceedings. *Id.* at 832. Prior to trial, the trial court granted the GAL's request to be released. *Id.* Following a trial without the presence of the GAL, the trial court awarded the husband sole physical and legal custody. *Id.* The *Keling* court reversed the custody award and held that the trial court's release of the GAL prior to trial constituted plain error. *Id.* at 833–34. In reaching its decision, the *Keling* court found manifest injustice because the GAL did not have the opportunity to question witnesses substantiating the wife's claims of child abuse. *Id.* Specifically, the court emphasized that the GAL was unable to question the children's therapist who testified at trial that "she saw signs of trauma in both children as a result of [the] husband's behavior." *Id.* at 834.

*Keling* is readily distinguishable from the instant case. In *Keling*, the court determined that the GAL's ability to hear the evidence and examine witnesses at tri-

al was necessary to properly represent the children's best interests in light of the wife's allegations of child abuse. Here, neither party alleged in his or her pleadings nor presented evidence at trial of child abuse or neglect. Additionally, the record reveals no other circumstances indicating that the GAL's presence at trial was necessary to properly protect D.L.'s best interests. In fact, Wife was the only witness at trial, and the trial court's judgment regarding child custody was nearly identical to its PDL Order, which the GAL had signed.

Without evidence that the absence of the GAL at trial caused a manifest injustice or a miscarriage of justice, we will not reverse for plain error. Husband offers no argument that the GAL's absence resulted in a manifest injustice or a miscarriage of justice. Rather, Husband essentially argues that the GAL's absence at trial, standing alone, is reversible error. We disagree, and find that other Missouri courts have declined to find plain error merely because an appointed GAL did not appear at trial. *See, e.g., In re Marriage of Demorrow*, 169 S.W.3d at 593–94 (distinguishing *Keling*); *Francka v. Francka*, 951 S.W.2d at 692. Point denied.[3]

### 3. Child Custody

■ In his fourth point, Husband challenges the trial court's judgment awarding Wife sole legal and physical custody of D.L. Specifically, Husband asserts that the trial court erred in its custody determination because "there was not a single statement or admissible exhibit regarding child custody." In response, Wife contends that her testimony at trial, as well as the admission of her proposed parenting plan

---

**3.** We note that given the lack of allegations or evidence from either party of abuse or neglect of the child, even had Husband properly preserved this point for appeal, he did not demonstrate reversible error because he failed to show that the GAL's absence at trial materially affected the merits of the action. *See* Rule 84.13(b).

constituted sufficient evidence to support the trial court's custody determination.

 "[A]n appellant faces a heavy burden to overturn the trial court's decision relating to an award of child custody." *Ficker v. Ficker,* 62 S.W.3d 496, 499 (Mo. App. E.D.2001). We will not disturb a trial court's custody determination unless we are firmly convinced that the welfare of the child requires some other disposition. *Bauer v. Bauer,* 97 S.W.3d 515, 519 (Mo. App. W.D.2002). Additionally, "[b]ecause the trial court has an affirmative duty to determine what is in [the] best interests of the children, we presume that the custody decision is motivated by what the court believes is best for the children." *Ficker,* 62 S.W.3d at 499. We therefore accord a trial court's determination regarding child custody greater deference than in other cases. *Id.*

"The court shall determine custody in accordance with the best interests of the child." Section 452.375.2 (Cum.Supp. 2005). To that end, the trial court shall consider the following factors:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and any other child or children for whom the parent has custodial or visitation rights, and the parent or other family or household member who is the victim of domestic violence from any further harm;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian.

Section 452.375.2(1)–(8).

Here, contrary to Husband's assertion, the record contained sufficient evidence regarding the relevant statutory factors to support the trial court's determination. First, Wife adduced evidence at trial regarding her wishes as to custody, including her proposed parenting plan. Under Wife's proposed parenting plan, Wife would have custody of D.L. except every other weekend, one night a week, certain holidays, and two weeks during the summer when Husband would have rights to visitation. The trial court ultimately adopted Wife's parenting plan. Second, Wife adduced evidence at trial regarding the parties' relationship with D.L. and their willingness to perform their parental duties. Specifically, Wife testified that D.L. consistently resided with her at the marital home. Wife further stated that although the PDL Order granted Husband reasonable visitation rights, Husband routinely failed to exercise his visitation rights

with D.L. Wife also noted that Husband had, on several occasions, indicated that he planned to visit D.L. at Wife's home but failed to appear. Third, Wife adduced evidence regarding her willingness to allow D.L. continuing, meaningful, contact with Husband. Specifically, Wife testified that she desired that Husband visit D.L., which is further reflected in the provisions of her proposed parenting plan. Finally, Wife described a history of abuse towards her, including her testimony that Husband physically abused her on at least two occasions. The above evidence was sufficient for the trial court to consider the relevant statutory factors and award custody in accordance with D.L.'s best interests.

In support of his position that the record lacks sufficient evidence regarding child custody, Husband relies primarily on *Turpin v. Turpin*, 570 S.W.2d 831 (Mo.App. 1978). *Turpin*, however, is not analogous to this case because, there, the "record [wa]s absolutely devoid of any evidence whatsoever upon which to base the trial court's award of custody . . ., except the purported agreement between the parents[.]" *Id.* at 833. Point denied.

### 4. Division of Marital Property

In his fifth point, Husband contends that the trial court improperly awarded Wife a disproportionate share of the marital property and that there was insufficient evidence of: (1) the values of the marital property; and (2) Husband's marital misconduct to justify the disproportionate award of marital property. Conversely, Wife contends that the record contained sufficient evidence of: (1) the marital property's values; as well as (2) Husband's misconduct warranting a disproportionate division of the marital property.

In dividing marital property, a trial court is vested with great flexibility and discretion. *Wright v. Wright*, 1 S.W.3d 52, 59 (Mo.App. W.D.1999). A trial court's division of marital property is presumptively correct, and the party challenging the division bears the burden of overcoming this presumption. *Ballard v. Ballard*, 77 S.W.3d 112, 116–17 (Mo.App. W.D.2002). Although a trial court is not required to assign specific values to marital property, the record must contain evidence from which the value of marital property can be ascertained. *Jarvis v. Jarvis*, 131 S.W.3d 894, 899 (Mo.App. W.D. 2004).

First, Husband contends that the trial court lacked sufficient evidence of the value of the marital property. The trial court divided the parties' marital property and debts as follows: Wife received the marital home, Mercedes and BMW vehicles, 50% of Husband's pension, the Edward Jones Account, and 21% of the parties' credit card debt. Husband received his remote control Helicopter Collection, Chevy Suburban vehicle and debt thereon, 79% of the parties' credit card debt, and 100% of Husband's debt.

The record includes sufficient evidence from which the trial court could ascertain the value of the parties' marital property and debt. The trial court took judicial notice of the parties' statements of property, which included the value of the majority of the parties' marital property. Specifically, the parties' statements of property disclosed that: (1) the marital home had equity of approximately $60,000; (2) all vehicles were paid in full except for $4,000 owed on the Chevy Suburban; (3) Husband's pension yielded monthly benefits of $1,485 upon Husband reaching 62 years old; (4) the parties' credit card debt totaled $12,505.84; and (5) Husband's credit card debt totaled $5,000. In addition to the statements of property, Wife testified at trial that: (1) at the time of trial, the marital home had equity of $58,000; (2)

the Mercedes and BMW were purchased for $33,800 and $13,432, respectively; (3) the Chevy Suburban had only one or two more payments remaining on the loan; (4) Husband's helicopter collection was worth approximately $31,250; and (5) the Edward Jones Account had been funded by a $148,658 employment discrimination settlement Wife received, of which the parties had withdrawn $85,161 to purchase the Mercedes and BMW and improvements for the marital home, as well as $1,428 a month for the mortgage payment on the marital home.

■■ Second, Husband contends that there was insufficient evidence that he committed marital misconduct of the type permitting the trial court to divide the marital property disproportionately in favor of Wife. The trial court found that Husband's marital misconduct included: (1) a history of hiding and secreting marital assets; (2) a history of physically abusing Wife; and (3) a longstanding extramarital relationship. Husband asserts that there is insufficient evidence that he had a history of either hiding and secreting marital assets or physically abusing Wife. Further, Husband argues that his extra-marital relationship did not result in additional burdens upon Wife.

■■ To determine a fair and equitable division of marital property, a trial court is required to consider, among other things, "[t]he conduct of the parties during the marriage." Section 452.330.1(4). "The rationale for considering the misconduct of the spouses in dividing marital property is that 'if one spouse is compelled to contribute more to the partnership endeavor due to the other's misconduct, he or she is entitled to have the errant spouse's misconduct taken into consideration ... in dividing marital property.'" *Ballard*, 77 S.W.3d at 117 (quoting *In re Marriage of Ballay*, 924 S.W.2d 572, 578 (Mo.App. S.D.

1996)). In other words, a disproportionate distribution of marital property is appropriate when the misconduct of one spouse changes the balance so that the other spouse is burdened with a greater share of the partnership load. *Id.*

We first find that sufficient evidence exists from which the trial court could determine that Husband had secreted marital assets and physically abused Wife. Specifically, Wife testified that she was fearful that Husband had "segregated money and secreted it without telling the Court or anybody about it" and that Husband had bragged to Wife that he had secreted money when he divorced his previous spouse. Further, Wife discussed an instance where she caught Husband taking a large amount of property from the marital home in the middle of the night. Wife testified that as she attempted to prevent Husband from driving off with the property, Husband dragged her in the street with his vehicle while hitting her hand, causing Wife to let go of the car and fall to the ground. Wife also described a second occurrence where Husband appeared at her work and attempted to disable her automobile to prevent her from driving it. Wife stated that as she tried to enter her car, Husband grabbed her by the throat and threw her to the ground.

■■ We also find that Wife presented evidence sufficient to support the trial court's determination that Husband's extra-marital affair precipitated the downfall of the marital relationship. *See Hight v. Hight*, 314 S.W.3d 874, 879 (Mo.App. S.D. 2010) ("Misconduct causing or contributing to the breakup of a marriage constitutes an added burden."). Evidence of Husband's extra-marital affair included phone records consisting of approximately two hundred telephone calls between Husband and another woman as well as Wife's testimony that she overheard Husband and the

other woman engaging in sexual intercourse when Husband accidentally activated his cell phone.

In addition to Husband's marital misconduct, the trial court issued several other findings of fact supporting its award of marital property to Wife. Specifically, the trial court found that Husband earned monthly income of $5,790 while Wife earned only $1,500. Additionally, the trial court found that D.L. had resided with Wife and granted Wife sole legal and physical custody. *See Horton v. Horton,* 961 S.W.2d 67, 71 (Mo.App. W.D.1997) ("[I]t is often beneficial to award the family home to the custodial parent.") (citing Section 452.330.1(1)). Finally, the trial court found that Wife contributed a substantial amount of marital property as a result of her employment discrimination settlement of $148,658, including approximately $40,000 in improvements to the marital house, the purchase of the BMW and Mercedes, and $1,428 per month for the mortgage payment. The trial court further found that Husband provided no funds for the above purchases. Point denied.

5. *Maintenance*

In his sixth point, Husband contends that the trial court erred in awarding Wife $1,948 per month in maintenance. More specifically, Husband asserts that: (1) there was insufficient evidence of Wife's reasonable monthly expenses for the trial court to determine Wife's reasonable needs; and (2) the evidence of Husband's income and reasonable expenses showed that Husband lacks the ability to pay $1,948 in monthly maintenance. In response, Wife argues that her testimony at trial and the parties' statements of income and expenses constituted sufficient evidence of: (1) Wife's reasonable expenses; and (2) Husband's ability to pay the awarded maintenance.

A trial court is vested with broad discretion in determining the amount and duration of a maintenance award in a legal separation case, and we will not reverse a maintenance determination absent an abuse of that discretion. *Childers v. Childers,* 26 S.W.3d 851, 854 (Mo.App. W.D.2000). An award of maintenance, however, cannot stand without evidence to support it. *Brooks v. Brooks,* 957 S.W.2d 783, 788 (Mo.App. W.D.1997).

Section 452.335.1 sets forth a two-part threshold test for determining whether a spouse is eligible for maintenance. *In re Marriage of Murphy,* 71 S.W.3d 202, 205 (Mo.App. S.D.2002). "The court must first consider whether the party requesting maintenance has sufficient property, including marital property divided during the dissolution proceedings, to provide for his or her reasonable needs." *Id.*; Section 452.335.1(1). "If the party requesting maintenance has insufficient property to meet his or her needs, the court then examines whether the party's reasonable needs can be met through appropriate employment." *In re Marriage of Murphy,* 71 S.W.3d at 205; Section 452.335.1(2). If a spouse meets the threshold test, the trial court shall award maintenance in amounts and for periods of time as the trial court deems just, after considering all the relevant factors. Section 452.335.2.

First, Husband contends that the record lacks sufficient evidence of Wife's reasonable monthly expenses for the trial court to determine Wife's reasonable needs. Contrary to Husband's assertion, the instant record contains sufficient evidence of Wife's reasonable expenses. Here, the trial court received as evidence Wife's statement of income and expenses, which itemized her reasonable expenses, totaling $4,835.75 per month. Additionally, Wife testified that the $4,835 figure was an accurate representation of her reasonable

monthly expenses at the time of trial. A spouse's statement of income and expenses may serve as substantial evidence of the spouse's reasonable expenses. *Cohen v. Cohen,* 73 S.W.3d 39, 50 (Mo.App. W.D. 2002).

The record also supports the trial court's finding that Wife lacked financial resources to meet her reasonable needs. *See* Section 452.335.1(1). Specifically, Wife's statement of income and expenses indicated that Wife earned only $1,500 per month through her employment, resulting in a $3,335 deficit between Wife's income and reasonable expenses.[4] Moreover, Wife is currently employed and Husband does not contend, and we do not find any support in the record, that Wife can meet her reasonable needs through different employment. *See* Section 452.335.1(2)

Second, Husband contends that the evidence of his income and reasonable expenses showed that he lacks the ability to pay $1,948 in monthly maintenance. We, however, find that the record supports a finding that Husband has the ability to pay the awarded maintenance because sufficient evidence demonstrates that Husband's income significantly exceeded his reasonable expenses.

With respect to Husband's income, the trial court found that Husband monthly income is $5,790 based on Wife's testimony and financial statements of Husband's average monthly income during 2007 and 2008. Husband suggests that the only evidence of his income came from a statement from July 1, 2009 to October 31, 2009 calculating his net income at $2,968.41. It is unclear why Husband ignores the evidence relied on by the trial court. In any event, we find that the trial court did not

err in using the 2007 and 2008 figures of Husband's average income when calculating Husband's income for maintenance purposes. *See Henbest v. Henbest,* 164 S.W.3d 198, 203 (Mo.App. S.D.2005) ("[C]ourts must look at past and present income *in toto* and consider a party's complete earning history as evidence of ability to pay maintenance.") (quotation omitted).

With respect to Husband's reasonable expenses, Husband's May 2009 statement of income and expenses attached to his pleadings demonstrated that Husband's reasonable expenses totaled $3,604 per month. Wife's testimony at trial, however, showed that Husband's statement of income and expenses overstated his actual reasonable expenses. Specifically, Husband's statement of income and expenses revealed that Husband paid $523 per month in utility and Direct TV bills, while evidence at trial established that Husband resides at his girlfriend's home and no longer pays the utility and Direct TV bills. Additionally, Husband's statement of income and expenses stated that Husband paid $390 per month on the loan for his Chevy Suburban, but Wife testified that Husband had only one or two more car payments remaining. Further, although Husband's statement of income and expenses included a $1,428 monthly mortgage payment, the mortgage obligation is now paid directly by Wife from Husband's maintenance payment. In light of these reductions, sufficient evidence showed that Husband currently earns approximately $4,527 per month more than he spends on his reasonable expenses.[5] Accordingly, the record supported the trial court's finding that Husband had the ability to pay

---

4. We note that, in his point on appeal, Husband does not challenge either the sufficiency of the evidence or the trial court's findings regarding Wife's monthly income.

5. Specifically, $4,527 represents the difference between $5,790, Husband's monthly income, and $1,263, Husband's reduced monthly expenses.

$1,948 per month in maintenance to Wife. Point denied.

### 6. Attorney's Fees & Court Costs

 In his seventh point, Husband contends that the trial court erred in awarding Wife $5,000 in attorney's fees and $1,199 in court costs. More specifically, Husband asserts that the record lacked sufficient evidence that Husband had the ability to pay the awarded attorney's fees and court costs. Husband argues that the trial court "had before it no evidence of either party's financial resources other than their incomes, which were not disparate at all, particularly considering the maintenance and child support [Husband] was ordered to pay [Wife]." Wife contends that the trial court did not err because she presented sufficient evidence of the reasonableness of the attorney's fees and costs and of Husband's ability to pay.

Under Section 452.355.1, a trial court may order a party to pay reasonable attorney's fees and other court costs after considering all relevant factors, including: (1) the financial resources of both parties; (2) the merits of the case; and (3) the actions of the parties during the pendency of the action. *Prewitt v. Hunter*, 105 S.W.3d 874, 877 (Mo.App. E.D.2003). We only reverse a trial court's award of attorney's fees if it is shown that the trial court, after considering all relevant factors, has abused its discretion. *Id.*

Contrary to Husband's contention, the record demonstrates that Husband earns significantly more than Wife, even considering Husband's maintenance and child support obligations. Specifically, Husband's monthly income exceeds his reasonable expenses and maintenance and child support obligations by $1,855, while Wife, including her employment income, maintenance, and child support, realizes $663 less than she needs to afford her reasonable monthly expenses.

More significantly, the record reflects that a majority of the attorney's fees and court costs were related to Husband's actions. In considering an award of attorney's fees and court costs, "the trial court may consider a party's conduct during litigation which unfairly increases the other party's legal fees." *Erickson v. Blackburn*, 169 S.W.3d 69, 80 (Mo.App. S.D. 2005). Wife expended $3,946 in attorney's fees in order to litigate motions for contempt based on Husband's failure to comply with the PDL Order. Additionally, Wife incurred $1,199 in costs associated with two properly-noticed depositions for Husband and Husband's girlfriend, which Husband failed to attend. Considering all of the above factors, we find that the trial court did not err or otherwise abuse its discretion in awarding Wife $5,000 in attorney's fees and $1,199 in court costs. Point denied.

### Conclusion

The judgment of the trial court is affirmed.

GARY M. GAERTNER, JR., P.J., and MARY K. HOFF, J., concur.