

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

IN THE INTEREST OF: C.A.M., JR.

) No. ED109128
)
) Appeal from the Circuit Court of
) the City of St. Louis
)
) Honorable Steven R. Ohmer
)
)
) Filed: May 3, 2022

## Introduction

C.A.M. Jr. appeals from the juvenile court's judgment dismissing its jurisdiction over him and allowing his case to be transferred to a court of general jurisdiction for prosecution as an adult following a section 211.071[1] hearing. C.A.M. Jr. brings two points on appeal. In Point I, C.A.M. Jr. argues the juvenile court plainly erred and violated his constitutional rights to confront the witnesses against him, due process, and be present at all "critical stages" by conducting his certification hearing by two-way video instead of permitting him to be physically present in court. In Point II, C.A.M. Jr. argues the juvenile court plainly erred and had no jurisdiction to transfer his case to a court of general jurisdiction for prosecution as an adult because he and his parents did not receive the proper notices and summonses as required by sections 211.101 and 211.111 and Rules 114 and 129.[2]

---

[1] All statutory references are to RSMo (2016), unless otherwise indicated.
[2] All rule references are to the Missouri Supreme Court Rules (2016), unless otherwise indicated.

Following an opinion by this Court on May 25, 2021, the case was transferred to the Missouri Supreme Court along with several similar cases involving proceedings conducted by video due to the COVID-19 pandemic. The Missouri Supreme Court issued three opinions in January 2022[3] and re-transferred this case with instructions for this Court to reconsider our holding given those decisions.

We hold the juvenile court plainly erred in holding C.A.M. Jr.'s certification hearing by two-way video. Because we vacate the juvenile court's certification judgment and remand for an in-person hearing, we need not consider his second point.

## Factual and Procedural Background

On September 3, 2019, the juvenile officer filed a petition alleging C.A.M. Jr. came within the juvenile court's jurisdiction under section 211.031.1(2)-(3) and C.A.M. Jr. committed, if he was an adult, first-degree tampering, resisting or interfering with arrest, second-degree murder, and unlawful use of a weapon.[4] C.A.M. Jr. and his mother were personally served with a summons and copy of the petition on October 11, 2019, ordering them to appear for a hearing on the petition on November 1, 2019. On November 21, 2019, the juvenile officer moved to dismiss its petition to allow C.A.M. Jr.'s case to be transferred to a court of general jurisdiction for prosecution as an adult. The juvenile officer's motion to dismiss included a subsection entitled "Notice of Hearing," which stated:

> NOTICE IS HEREBY GIVEN that the Juvenile Officer has filed a Motion in the Circuit Court, Juvenile Division, a copy of which is attached hereto, requesting the Court to dismiss the petition heretofore filed in the interest of the said Juvenile to allow him/her to be prosecuted under the General Law and that

---

[3] The Missouri Supreme Court decided *J.A.T. v. Jackson Cty. Juvenile Office*, 637 S.W.3d 1 (Mo. banc 2022); *C.A.R.A. v. Jackson Cty. Juvenile Office*, 637 S.W.3d 50 (Mo. banc 2022); and *State v. Smith*, 636 S.W.3d 576 (Mo. banc 2022).

[4] The allegations that C.A.M. Jr. committed second-degree murder and unlawful use of a weapon were added by the juvenile officer's amendment of the petition on October 1, 2019.

2

the Juvenile Officer will call up a status conference on said Motion on November 25, 2019, Courtroom No. 1, 920 North Vandeventer, St. Louis, Missouri.

The purpose of this Hearing is to determine whether the Juvenile is a proper subject to be dealt with under the provisions of the Juvenile Code. If it is determined that the juvenile is not a proper subject, the Court will dismiss the petition in order to allow prosecution under the general law.

You have the right to have an attorney present to assist you at the hearing, or you may waive your right to an attorney. If you desire to be represented by an attorney, you should begin now to obtain his services. If you cannot afford to pay an attorney, but wish to have an attorney represent you, the Court has the power to appoint a Public Defender, or other counsel, to represent you. However, the court may, after notice and hearing, order the custodian to make reimbursement for all or part of the cost of representation of the Juvenile.

You have a right to question any witnesses who appear at the hearing and to bring any witnesses with you.

This "Notice of Hearing" was addressed to C.A.M. Jr.'s attorney, C.A.M. Jr.'s mother, C.A.M. Jr. in the care of Superintendent/Detention, and Superintendent/Detention. The juvenile officer's motion to dismiss also included a subsection entitled "Certificate of Service," which stated a copy of the motion to dismiss and "Notice of Hearing" "was served on the Juvenile and the Juvenile's custodians by personal service, or, with leave of the Court, by mailing a true copy of the same by first-class, United States mail, postage pre-paid, to the last known address as stated in the foregoing Notice of Hearing."

A status conference on the juvenile officer's motion to dismiss was held on November 25, 2019. Another status conference was held on March 19, 2020, where the juvenile court scheduled C.A.M. Jr.'s certification hearing for May 18, 2020. On April 22, 2020, C.A.M. Jr. filed notice of his intent to introduce business records at the certification hearing and endorsed witnesses for the certification hearing. On May 11, 2020, C.A.M. Jr. moved to continue the certification hearing set for May 18, 2020, with the juvenile officer's consent. The juvenile court rescheduled C.A.M. Jr.'s certification hearing for July 20, 2020.

C.A.M. Jr.'s certification hearing was held on July 20, 2020. The juvenile officer, counsel for the juvenile officer, and C.A.M. Jr.'s counsel were physically present at the hearing. C.A.M. Jr. appeared by two-way video conferencing from the juvenile detention center. The witnesses called on C.A.M. Jr.'s behalf also appeared by video. C.A.M. Jr. did not object to his attendance or the attendance of his witnesses at the certification hearing by video.

The juvenile court proceeded with C.A.M. Jr.'s certification hearing. Deputy Juvenile Officer David Gaither testified in support of C.A.M. Jr. being tried as an adult. Gaither testified, if the allegations against C.A.M. Jr. were true, he believed C.A.M. Jr. needed long-term care and structure. He testified he knew of no private residential facilities in Missouri that would admit C.A.M. Jr. if he was adjudicated for second-degree murder, and he noted C.A.M. Jr. had no identifiable mental health needs requiring residential treatment services. Gaither testified he did not believe the Division of Youth Services ("DYS") was an appropriate placement for C.A.M. Jr. He believed the seriousness of the alleged offenses "require[d] longer work than the time that is available for [C.A.M. Jr.] to address issues of this significance" at DYS. C.A.M. Jr.'s counsel cross-examined Gaither.

C.A.M. Jr. called two witnesses: his grandmother, Diane Sutton, and his relative, John King. Sutton testified by video she believed C.A.M. Jr. needed structure and guidance but C.A.M. Jr. should get the opportunity to "redeem his life as a child." King testified by video he believed C.A.M. Jr. was "a victim of his surroundings" and "was in the wrong place at the wrong time." He testified he believed C.A.M. Jr. needs guidance but could be rehabilitated.

Following the hearing, the juvenile court entered its judgment dismissing the petition under section 211.071 and transferred jurisdiction over C.A.M. Jr. to a court of general jurisdiction. C.A.M. Jr. was released and discharged from the juvenile court.

4

This appeal follows.

## Standard of Review

C.A.M. Jr. did not object to the juvenile court conducting his certification hearing without his physical presence or the alleged lack of notice and summonses provided to him and his parents. "A party is not entitled to have allegations of error considered on appeal if they were never presented to . . . the trial court." *Keling v. Keling*, 155 S.W.3d 830, 833 (Mo. App. E.D. 2005). Thus, we may review C.A.M. Jr.'s claims only for plain error. *Id.* "Plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 84.13(c). "Although 'prejudicial error' is a condition precedent of 'plain error,' 'prejudicial error' does not inevitably rise to the level of 'plain error.'" *Deck v. State*, 68 S.W.3d 418, 424 (Mo. banc 2002). Plain error review involves two steps. *State v. Darden*, 263 S.W.3d 760, 762 (Mo. App. W.D. 2008). "First, the court must determine whether the trial court committed an evident, obvious and clear error, which affected the substantial rights of the appellant. If obvious and clear error is found in the first step of the review, the second step of plain error review requires the court to determine whether manifest injustice or miscarriage of justice resulted therefrom." *Id.* at 762-63. "Appellate courts use the plain error rule sparingly and limit its application to those cases where there is a strong, clear demonstration of manifest injustice or miscarriage of justice." *State v. Perry*, 954 S.W.2d 554, 560 (Mo. App. S.D. 1997).

## Discussion

*Point I: Certification Hearing Conducted Without C.A.M. Jr.'s Physical Presence*

On May 4, 2020, the Missouri Supreme Court issued Operational Directives outlining how Missouri Courts should handle in-person proceedings during the COVID-19 pandemic. The

Court suspended in-person proceedings with certain exceptions including "[p]roceedings pursuant to chapters 210 and 211 pertaining to juvenile delinquency and abuse, neglect, and termination of parental rights." The Court then stated that for in-person hearings, "judges are encouraged to utilize all available technologies – including teleconferencing and video conferencing – to further limit in-person courtroom appearances *to the extent not prohibited by the constitution or statutes as to these proceedings*." (emphasis added).

During the pandemic, the juvenile court and detention center's policy was not to bring juveniles in detention to the courtroom for hearings because of public health concerns for the entire detention center population. The juvenile court therefore prohibited C.A.M. Jr.'s physical presence at his certification hearing.

In Point I, C.A.M. Jr. argues the juvenile court plainly erred by conducting his certification hearing without his physical presence because doing so violated his constitutional rights to confrontation, due process, and be present at "critical stages" as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, Article I, section 18(a) of the Missouri Constitution, section 211.071, and Rules 114 and 129.

"Juvenile proceedings are civil, not criminal, and are focused on continuing care, protection, and rehabilitation of the juvenile, and not punishment." *In re A.C.C.*, 561 S.W.3d 425, 428 (Mo. App. E.D. 2018) (citing *J.D.H. v. Juvenile Court of St. Louis Cty.*, 508 S.W.2d 497, 500 (Mo. banc 1974)). However, "the constitutional protections applicable in criminal proceedings are also applicable in juvenile delinquency proceedings due to the possibility of a deprivation of liberty equivalent to criminal incarceration." *In re N.D.C.*, 229 S.W.3d 602, 605 (Mo. banc 2007). The United States Supreme Court has recognized certification hearings are

6

"critically important" proceedings that "must measure up to the essentials of due process and fair treatment." *Kent v. United States*, 383 U.S. 541, 560, 562 (1966).

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. CONST. amend. VI. The Sixth Amendment applies to the states through the Fourteenth Amendment. *State v. Justus*, 205 S.W.3d 872, 878 n.6 (Mo. banc 2006). "One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." *Illinois v. Allen*, 397 U.S. 337, 338, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (emphasis added); *see also* MO. CONST. art. I, sec. 18(a) (emphasis added) ("That in criminal prosecutions the accused shall have the right to appear and defend, in person and by counsel"); § 211.071.7(3) (requiring that, upon finding the petition should be dismissed, the juvenile court must enter a dismissal order containing "[f]indings showing that the [certification] hearing was held in the presence of the child and his or her counsel").

While the right to be present is rooted largely in the Confrontation Clause, the right also has a due process component. *United States v. Gagnon*, 470 U.S. 522, 526 (1985). "[E]ven in situations where the defendant is not actually confronting witnesses or evidence against him, he has a due process right to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (internal quotations omitted).

The right to be present is a common law principle designed to ensure the accused's presence impresses the gravity of the proceedings upon the participants. In *Crosby v. United States*, the United States Supreme Court stated, "a fair trial could take place only if the jurors met the defendant face-to-face and only if those testifying against the defendant did so in his

7

presence." 506 U.S. 255, 259 (1993) (internal citations omitted). C.A.M. Jr. correctly notes section 211.071.7(3) applies this principle to minors, requiring certification hearings to be held "in the presence of the child."

Our discussion is guided by the Missouri Supreme Court's recent decision in *J.A.T.* There, the Court stated it "was careful to ensure its order incorporating the [COVID] Operational Directives would not be interpreted to permit the violation of a juvenile's constitutional or statutory rights." 637 S.W.3d at 4. The Court emphasized its Operational Directives "specifically provided that 'proceedings pursuant to chapters 210 and 211 pertaining to juvenile delinquency' were excluded from the provisions allowing for remote proceedings." *Id*. at 5. The Directives further stated "[s]uch proceedings shall be limited to the attorneys, parties, witnesses, security officers, and other individuals necessary to the proceedings as determined by the judge presiding over the proceedings." *Id*. (citing *In re Operation Directives for Easing COVID-19 Restrictions on In-Person Proceedings* (May 4, 2020)).

Here, C.A.M. Jr. was prohibited from attending his certification hearing in person, a "critically important" proceeding to which the "essentials of due process and fair treatment" attach. *Kent*, 383 U.S. at 560, 562. C.A.M. Jr.'s constitutional rights were therefore implicated, contravening the Missouri Supreme Court's careful drafting of its COVID Operational Directives "not [to] be interpreted to permit the violation of a juvenile's constitutional or statutory rights." The juvenile court therefore had no discretion under the Operational Directives to hold the certification hearing without C.A.M. Jr.'s physical presence. *J.A.T.*, 637 S.W.3d at 4-5.

We acknowledge the right to be physically present can be waived, provided the waiver is made "voluntarily, knowingly, and intelligently." *Id*. at 8 (citing *State v. Driskill*, 459 S.W.3d

8

412, 426 (Mo. banc 2015)). Although C.A.M. Jr. did not object to the video format of his certification hearing, nothing in the record indicates his purported unspoken waiver was made voluntarily, knowingly, and intelligently. As the *J.A.T.* Court noted, "[n]either the United States Constitution nor the Missouri Constitution are entitled to take 'sick days.'" 637 S.W.3d at 10.

Next, we address our plain error standard of review. C.A.M. Jr. established (1) the juvenile court committed an obvious and clear error affecting his substantial rights and (2) he suffered manifest injustice or miscarriage of justice as a result. *See* Rule 84.13(c); *Darden*, 263 S.W.3d at 762-63 (Mo. App. W.D. 2008). C.A.M. Jr.'s substantial rights were violated because he was denied, and did not voluntarily, knowingly, and intelligently waive, his constitutional right to be physically present at his "critically important" certification hearing. *Kent*, 383 U.S. at 560, 562. This violation was an "obvious and clear" error because the Operational Directives provided "proceedings pursuant to chapters 210 and 211 pertaining to juvenile delinquency' were excluded from the provisions allowing for remote proceedings." *J.A.T.*, 637 S.W.3d at 5. Upholding this violation of C.A.M. Jr.'s constitutional right to be present at his certification hearing would be a miscarriage of justice, particularly given the Operational Directives stated they were *not* to be interpreted to permit violations of juveniles' constitutional or statutory rights. *Id*. at 4, 10.

Our holding is limited to C.A.M. Jr.'s right to be physically present at a "critically important" stage. As the *J.A.T.* Court explained, the right to be physically present reaches circumstances where "a fair and just hearing would be thwarted by [the juvenile's] absence, and to that extent only." 637 S.W.3d at 8. Because we remand for an in-person certification hearing, we need not address C.A.M. Jr.'s claim that his right to confrontation was also violated. *See*

9

*J.A.T.*, 637 S.W.3d 10 n.5. We remand for the juvenile court to hold his certification hearing in person.

Point I is granted.

*Point II: Notice and Summonses Provided to C.A.M. Jr. and His Parents*

In Point II, C.A.M. Jr. argues the juvenile court plainly erred by transferring his case to a court of general jurisdiction for prosecution as an adult because he and his parents did not receive the proper notices and summonses as required by sections 211.101 and 211.111 and Rules 114 and 129. He argues this lack of sufficient notice rendered the juvenile court without jurisdiction to conduct his certification hearing, dismiss the petition against him, and allow his case to be transferred to a court of general jurisdiction.

Because Point I is dispositive and requires remand, we need not consider whether the juvenile court plainly erred in this respect.

### Conclusion

The juvenile court plainly erred conducting C.A.M. Jr.'s certification hearing without his presence in court. The juvenile court's certification judgment is vacated and remanded. We instruct the juvenile court to conduct C.A.M. Jr.'s certification hearing with C.A.M. Jr. physically present in the courtroom.

_____
Philip M. Hess, Judge

Gary M. Gaertner, Jr., P.J., and
Michael Gardner, J. concur.

10